UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ELLEN JANE KUTTEN, ET AL., | MISCELLANEOUS ACTION |
| Plaintiffs, | |
| v. | Case No. 05-20-KAJ |
| BANK OF AMERICA, N.A., ET AL. | |
| Defendants. | (Case No. 4:04-CV-0244 TIA currently pending in the United States District Court for the Eastern District of Missouri |

## MEMORANDUM OF THIRD PARTY NATIONS FUNDS TRUST
## IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL

March 9, 2005

THE BAYARD FIRM
Richard D. Kirk (rk0922)
Cheryl Siskin (cs3437)
222 Delaware Avenue, 9th Floor
Wilmington, Delaware   19801
(302) 655-5000

**Attorney for Third Party Nations Funds Trust**

OF COUNSEL:
Stephen M. Colangelo
MORRISON & FOERSTER LLP
1650 Tysons Boulevard, Suite 300
McLean, VA   22102
(703) 760-7700

578928v1

## INTRODUCTION

Nations Funds Trust ("Nations") submits this memorandum in opposition to the motion to compel it to respond to a subpoena ("Subpoena") served on it as a non-party, by the plaintiffs, Ellen Jane Kutten and Mary Ann Arnold (individually "Kutten" and "Arnold" respectively and collectively "Plaintiffs").[1]  The Plaintiffs are beneficiaries of certain trusts ("Trusts"), for which the defendant Bank of America, N.A., a subsidiary of the Bank of America Corporation (collectively "Bank"), served or serves as trustee.  The Plaintiffs are unhappy because the Bank invested Trust assets that were previously invested in the Bank's Common Trust Funds in mutual funds and claim that the Bank charged excessive fees for the services it provided.  Nations objected to the Subpoena because it is overly broad, unduly burdensome and seeks documents that are irrelevant to the case.  Moreover, it requests information that was the subject of a motion to compel that was recently denied by the court in which the case is pending.

## STATEMENT OF FACTS

Nations, a Delaware statutory trust, is an investment company registered under the Investment Company Act of 1940 ("ICA").  15 U.S.C. § 80a-8 (2004).  Pursuant to Delaware statutory law and the provisions of the ICA, it is governed by a Board of Trustees ("Board") elected by its shareholders and/or appointed by its Board.  15 U.S.C. § 80a-16 (2004); DEL. CODE ANN. tit. 12, § 3806 (2004).  Nations houses a family of over fifty mutual funds known as the Nations Funds.[2]  The shareholders of Nations are the persons and entities that own the shares

---

[1] The Subpoena is attached as Exhibit 1 to the Memorandum of Law in Support of the Plainitffs' Motion to Compel Compliance with Civil Subpoena to Nations Funds Trust ("Plaintiffs' Brief").

[2] *See* Declaration of Robert Carroll, filed contemporaneously (hereafter "Carroll Declaration"), at ¶ 2.

of the various Nations Funds.[3]  Nations has no staff or employees other than its Trustees and

officers, and instead has contractual relationships with various entities to provide it services.

Nations relies on these service providers to maintain its documents and records.[4]  Nations has a

contractual relationship with certain affiliates of the Bank to serve as its investment adviser,

distributor and administrator, but is independent of the Bank and, as an independent registered

investment company, is not part of the Bank's corporate family.[5]

Nations is not a party to the underlying action and has no direct relationship with the

Plaintiffs or the Trusts.  Moreover, neither of the Plaintiffs is a shareholder in Nations.  Rather,

the Plaintiffs were the beneficiaries of the Trusts, and the Bank invested funds from those Trusts

in a small number of Nations Funds during the years 2000 to 2002.[6]

The underlying case was filed in the United States District Court for the Eastern District

of Missouri on April 2, 2004.  Although it purports to be a class action, the Plaintiffs have not

moved to certify the class, and the judge previously presiding over the case indicated that it was

unlikely that it would ever be certified as a class.[7]  Discovery in the underlying case is ongoing

and Plaintiffs have propounded 72 document requests and 15 interrogatories on the Bank.[8]  Most

of the requests previously propounded on the Bank overlap with the discovery requested by the

Subpoena.  In response to these requests, the Bank reviewed over 600,000 pages of documents

---

[3] *Id.* at ¶ 3.

[4] *Id.* at ¶ 4.

[5] *Id.* at ¶ 5.

[6] *See* Declaration of Mary Hackett, filed contemporaneously (hereafter, "Hackett Declaration"), at ¶ 2.

[7] *See* Attachment 2 to Hackett Declaration at 4.

[8] *See* Hackett Declaration at ¶ 3.

578928v1

and produced over 75,000 pages of documents.[9]  Because the Bank's affiliates maintain Nations'

records in their capacities as its investment adviser, administrator and distributor, the Bank has

access to the Nations documents.[10]  In response to the Plaintiff's discovery requests in the

underlying case, the Bank has produced documents that the Bank's affiliates maintain on behalf

of Nations in their capacities as its investment adviser, administrator and distributor.[11]

    The Plaintiffs, unsatisfied with the Bank's efforts, filed a motion to compel in the

underlying case.[12]  Their motion sought much of the same information now sought by the

Subpoena.[13]  Magistrate Judge Adelman denied the Plaintiffs' motion to compel, holding, "[n]ot

only would it be burdensome to defendant to aid plaintiffs in a fishing expedition, but plaintiffs

have failed to meet their burden of demonstrating the relevance of this broad scope of

discovery."[14]

    The Subpoena that is the subject of this motion was served on Nations on November 12,

2004.[15]  Pursuant Federal Rule of Civil Procedure 45, Nations filed a timely objection by letter

dated November 24, 2004.[16]  This is the second subpoena served on Nations in this case; the

---

[9] *Id.* at ¶ 4.

[10] *Id.* at ¶ 5

[11] *Id.* at ¶ 5.

[12] *Id.* at ¶ 6.

[13] The Plaintiffs' Interrogatory Nos. 1 through 7 request information relating to all of the
fiduciary accounts of the Bank and the investments of those accounts in the Nations Funds.  *See*
Attachment 1 to Hackett Declaration at 9-16.  Request No. 13 to the Subpoena seeks the same
information.  *See* Exhibit 1 to the Plaintiffs' Brief.

[14] *See* Attachment 3 to Hackett Declaration at 3-4.

[15] *See* Exhibit 1 to the Plaintiffs' Brief.

[16] See letter from Stephen Colangelo to Amy Boomhouwer, dated November 24, 2004,
attached as Exhibit 2 to the Plaintiffs' Brief.

Plaintiffs' issued a defective subpoena in October 2004, to which Nations also objected.[17] Nations repeatedly asked that the Plaintiffs first seek relevant documents from the parties to the litigation and narrow the focus of the Subpoena requests to minimize the burden imposed on Nations as a non-party to the litigation, and expressed a willingness to discuss the reasonable production of any documents relevant to the litigation that were not available from the defendants.[18]  Nations has also asked that Plaintiffs pay the costs incurred by it in searching for and producing documents.[19]  Most recently, Nations identified information in the public domain that satisfies several of Plaintiffs' requests.[20]  But the Plaintiffs refuse to narrow the requests or to agree to pay the costs of the production.  Instead, they filed this motion on February 9, 2005, but did not serve it on Nations until two weeks later on February 23, 2005.

## ARGUMENT

The Subpoena seeks information that is available from parties to the litigation or is in the public domain.  Further, it is overly broad because it seeks information that is not relevant to the Plaintiffs' complaints about the investment of Trust assets.  Judge Adelman, presiding over the underlying case, already denied the Plaintiffs' motion to compel much of the same information from the Defendants to the case.  Additionally, the Subpoena requests are unduly burdensome and impose an unreasonable burden on a non-party.

---

[17] See letter from Stephen Colangelo to Amy Boomhouwer, dated October 20, 2004, attached as Exhibit 3 to the Plaintiffs' Brief.

[18] See Exhibits 2 and 3 to the Plaintiffs' Brief.

[19] See Exhibits 2 and 3 to the Plaintiffs' Brief, and letter from Stephen Colangelo to Steven Hamburg, dated January 3, 2005, attached as Exhibit 8 to the Plaintiffs' Brief.

[20] See letter from Stephen Colangelo to Steven Hamburg, dated February 17, 2005, attached hereto as Exhibit 1.

I.     **The Subpoena Seeks Information That Is Available From Parties to the Litigation or in the Public Domain.**

The Subpoena seeks information that is available from parties to the litigation.  In

response to the Plaintiffs' discovery requests, the Defendants reviewed over 600,000 pages and

produced over 75,000 pages.[21]  These include the Nations documents that Bank affiliates

maintain on Nations' behalf as its advisor, administrator and distributor.[22]  The Bank does not

have access to a set of documents that is <u>similar</u> to the Nations documents, it has access to the

very <u>same</u> documents.  There is no reason, therefore, for the Plaintiffs to seek these documents

from a non-party outside of the regular discovery process.  The Subpoena is therefore largely

duplicative of discovery that was already sought and obtained from the Bank or that was denied

in the recent motion to compel.

Additionally, some of the Subpoena requests seek information that is readily available in

the public domain, something counsel for Nations has repeatedly explained to the Plaintiffs,

including pointing counsel directly to some of it.[23]  Nations offered to discuss production of

reasonable, relevant documents that are not in the Bank's custody or in the public domain, but

Plaintiffs refused to limit the scope of their requests.  They would instead have Nations, as a non-

party, expend tremendous effort and cost to review and produce information that is available

from the Bank, a party to the litigation.

II.     **The Subpoena Seeks Irrelevant Discovery, Including Information That Was Already Denied by the Court Where the Case Is Pending.**

The bulk of the Subpoena requests are for irrelevant documents, including information

that the Eastern District of Missouri already declined to order be produced.  The underlying case

---

[21] *See* Hackett Declaration at ¶ 4.

[22] *Id.* at ¶ 5.

[23] *See* Exhibits 2 and 3 to Plaintiffs' Brief and Exhibit 1 attached hereto.

involves the Bank's investment of the assets of the Trusts for which Kutten and Arnold are beneficiaries in a small number of the Nations Funds during the years 2000 to 2002.[24]  The Plaintiffs complain that the Bank charged excessive fees in connection with those investments.[25]  Their case, however, has no bearing on any of the other fiduciary accounts at the Bank, or the investment of assets in other Nations Funds (the numerous Funds in which Trust assets were not invested).  The Plaintiffs' case also does not concern the manner in which the Nations Funds are advised, administered or distributed.  The Plaintiffs have provided no reason why they should have access to unrelated fiduciary accounts at the Bank, or to unrelated, possibly proprietary, information concerning the management of the Nations Funds.

In fact, Judge Adelman of the Eastern District of Missouri already denied much of the same discovery to them on grounds that it is irrelevant.[26]  Specifically, Subpoena Request No. 13 asks for all documents from Nations relating to the conversions of fiduciary assets held by the Bank into shares of any Nations Funds.[27]  The Plaintiffs do not attempt to explain why these documents are relevant or why they should have access to documentation relating to every, unrelated fiduciary account at the Bank; they simply insist that "it cannot be argued that they are not."[28]

It is hardly surprising, therefore, that Judge Adelman rejected the Plaintiffs' attempt to obtain the same information from the Bank.  The Plaintiffs had asked for Interrogatory responses from the Bank concerning the Bank's investments on behalf of each fiduciary account in the

---

[24] *See* Hackett Declaration at ¶ 2.

[25] *See* Plaintiffs' Brief at 1-2.

[26] *See* Attachment 3 to Hackett Declaration at 3-4

[27] *See* Exhibit 1 to Plaintiffs' Brief.

[28] *See* Plaintiffs' Brief at 9.

Nations Funds.[29]  They steadfastly refused to limit their requests to the particular investments made on behalf of the Trusts.  Judge Adelman, after having "thoroughly considered" the parties' pleadings and arguments, noted that the Plaintiffs "seek information on more than 80,000 fiduciary accounts in addition to other information regarding Nations Funds" from 1997 to the present. [30]  He then rejected the Plaintiffs' relevance arguments, ruling that this information is not related to the Plaintiffs' claims.  He specifically characterized their attempt to get it as a "fishing expedition." [31]  Judge Adelman also acknowledged that complying with the requests would be an immense burden for the Bank. [32]

Unhappy with Judge Adelman's order, the Plaintiffs now would have Nations—a non-party—provide them with irrelevant information they could not get from the Bank.  But because it is irrelevant, and discovery of this information has already been denied by the court where the case is pending, this discovery should also be denied from Nations.  *See Mannington Mills, Inc. v. Armstrong World Indus.*, 206 F.R.D. 525, 532 (D. Del. 2002), *citing American Standard, Inc. v. Pfizer Inc.*, 828 F.2d 743 (Fed. Cir. 1987) ("Where proof of either relevance *or* need is not established, discovery is properly denied").

### III.     The Subpoena is Overly Broad, Unreasonable and Oppressive.

Nations is not a party to the litigation.  Most of the Subpoena's requests are overly broad, unreasonable and oppressive and are written without any limitation (specifically Requests 1-4, 6-8 and 13-18 contain no limitations).  It is apparent from the face of the Subpoena that it would take extensive time and resources to respond to these requests.  For example, Request No. 3 asks

---

[29] *See* Attachment 1 to Hackett Declaration at 9-16.

[30] *See* Attachment 3 to Hackett Declaration at 1, 3-4.

[31] *Id.* at 3-4.

[32] *Id.*

for documents relating to the selection of investment advisors for all of the Nations Funds from April 1997 to the present—nearly an eight year period. Under Federal law, Nations undertakes a detailed selection or review process for advisors and subadvisors for the Nations Funds.[33] Substantial attorney-time would be required to review the extensive documentation relating to these processes, an unnecessary and inequitable burden to place on Nations, especially where the documents are irrelevant.[34] The Plaintiffs have not demonstrated why Nations, as a non-party, should be required to endure this burden.

The Federal Rules expressly address this type of situation:

> A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and reasonable attorney's fee.

Fed. R. Civ. P. 45(c)(1). The Plaintiffs have not taken any steps to avoid imposing undue burden or expense on Nations. Nations has repeatedly explained the burdensomeness of the Subpoena to the Plaintiffs, but they refused to limit the Subpoena's scope. On its face, therefore, the Subpoena violates the Federal Rules, and Nations should not have to respond to it. *See Williams v. City of Dallas*, 178 F.R.D. 103, 109-10 (N.D. Tex. 1998) (subpoena requiring production of "any and all documents" was overly broad on its face).

For this reason, the motion to compel should be denied. At the very least, if Nations is required to respond to the Subpoena, the Court should order the Plaintiffs to pay the reasonable cost of complying, as provided in Rule 45.

---

[33] 15 U.S.C. § 80a-15(a) (2004).

[34] *See* Carroll Declaration at ¶ 6.

IV.    **The Subpoena Seeks Documents that Are Proprietary and Protected by the Attorney/Client Privilege or Work Product Doctrine.**

Much of the information sought by the Subpoena is confidential or protected by the attorney-client privilege and/or the attorney work product doctrine. The Plaintiffs' refuse to explain why a non-party such as Nations should be forced to disclose documents containing personal client information, proprietary research or information that might be used for inappropriate trading. They contend that Nations documents would be protected by a confidentiality agreement in place in the Eastern District of Missouri.[35] But it would be inequitable for Nations to be required to travel to a jurisdiction where it is not present to submit to an agreement it did not negotiate in a case in which it is not a party. The confidentiality of any Nations documents that it is required to produce should be protected by the Court that orders their production.

---

[35] *See* Plaintiffs' Brief at 12-14.

V.    **Nations Is Not Obligated to Provide a Privilege Log and Has Not Waived Attorney-Client Privilege or the Work Product Doctrine.**

The Plaintiffs illogically argue that Nations has waived the attorney-client privilege and work product doctrine because it has not produced a privilege log.[36]  Their argument puts the cart before the horse.  As it is permitted to do under Rule 45, Nations served timely objections to the unreasonable, overly broad and irrelevant Subpoena requests.[37]  Nations cannot produce a privilege log until it has reviewed the documents, and it has not reviewed the documents because it objected to the scope of the Subpoena as Rule 45 permits it to do.

The Advisory Committee for the Federal Rules of Civil Procedure recognized that some subpoenas would be so broad that to assert a claim of privilege, complete with an adequate privilege log, would be an unreasonable burden:

> A person served a subpoena that is too broad may be faced with a burdensome task to provide full information regarding all that person's claims to privilege or work product protection.  Such a person is entitled to protection that may be secured through an objection made pursuant to paragraph (c)(2).

1991 Committee Note to Amendment of Rule 45(d)(2).  Nations has properly objected to the Subpoena and, therefore, has not compiled a privilege log.  The Plaintiffs' argument that Nations waived the attorney-client privilege and work product doctrine because it complied with the Federal Rules is unreasonable and should be rejected.

---

[36] *Id.* at 12.

[37] *See* Exhibits 2 and 3 to Plaintiffs' Brief.

VI.     **Objections to Specific Subpoena Requests.**

For the reasons specifically stated below, Nations should not be required to endure the unreasonable burden of complying with the Subpoena requests.

A.     **Request Nos. 1, 2 and 3 Regarding the Background and Selection of Trustees.**

Request Nos. 1, 2 and 3 seek all documents relating to the background and selection of the Nations' Trustees. Under the ICA, the selection of Trustees is heavily regulated, with the Trustees' identities and affiliations publicly disclosed in SEC filings.[38] Specifically, the annual Statement of Additional Information ("SAI") lists the identity of the Trustees, the length of their terms, their occupations, the number of funds they oversee and the other directorships they hold. The SAI also highlights whether each Trustee is independent or not.[39] Counsel for Nations showed the Plaintiffs where they can find this information.[40]

In addition to being publicly available, documents responsive to these requests are in the Bank's custody. However, this is the same information that Judge Adelman has already ruled was irrelevant and need not be produced by the Bank. Therefore, Nations should not be required to produce the information requested, most of which is publicly available.

B.     **Request Nos. 4, 6 and 7 Regarding Fees Charged for Advising, Administration and Distribution of the Nations Funds.**

Request Nos. 4 and 6 seek documents concerning the advisory fees for the Nations Funds. Documents responsive to these requests are available in publicly filed prospectuses. Nations should not be required to provide information to the Plaintiffs that they can obtain

---

[38] An SAI is filed as directed by SEC Form N-1A.

[39] *See* Carroll Declaration at ¶ 7.

[40] *See* Exhibit 1.

themselves. Moreover, the advisory fees of the Nations Funds are irrelevant to the underlying litigation. Request No. 7 requests documents concerning 12b-1 fees paid by the Nations Funds to any securities broker or dealer. However, the Trust assets that the Bank invested for Plaintiffs were used to purchase a class of Nations Funds shares that do not pay 12b-1 fees.[41]

### C.    Request No. 5 Regarding Minutes of the Nations' Board of Trustees.

Request No. 5 seeks all minutes of the Nations Board meetings and any other materials prepared in connection with those meetings. The Nations Board meets several times per year, generating voluminous materials for each meeting that address all of the issues involved in the management of the Nations Funds.[42] The Plaintiffs' have not identified the information they seek from these materials. For instance, they have not even attempted to limit the request to subject matters relevant to their case. Therefore, the request is overly broad and seeks irrelevant discovery. Additionally, like the other documents requested, affiliates of the Bank likely have custody of any relevant Board materials in their capacity as service providers to Nations. It is more appropriate for the Plaintiffs' to seek them from the Bank than from Nations. However, this is again the same information that Judge Adelman ruled was irrelevant and need not be produced by the Bank.

### D.    Request No. 8 Regarding the Securitization of the Cash Flow Paid to Investment Advisors.

Request No. 8 requests all documents relating to the securitization of the cash flow paid to the investment advisors of any of the Nations Funds. However, the cash flow paid to the

---

[41] *See* Carroll Declaration at ¶ 8.

[42] *Id.* at ¶ 9.

investment adviser to Nations Funds is not securitized.[43]  Therefore, no responsive documents exist.

### E.    Request Nos. 9 through 12 Regarding the New York Attorney General Investigation of Market Timing and Late Day Trading.

The Plaintiffs withdrew request Nos. 9, 10, 11 and 12 as a result of a stipulation entered into by the Plaintiffs and the Bank and so ordered by the court in the Eastern District of Missouri.[44]  The Plaintiffs did not notify Nations that they were withdrawing these requests until it served its brief.

### F.    Request No. 13 Regarding the Conversion of Fiduciary Assets Into Shares of Nations Funds.

Request No. 13 seeks all documents relating to the conversion of fiduciary assets held by the Bank into shares of any of the Nations Funds.  This request concerns the Bank's investment decisions on behalf of its fiduciary accountholders.  Therefore, responsive documents are available from the Bank, and the Bank already produced 75,000 pages of documents, including Nations documents.[45]  However, this request also seeks irrelevant information because it is not limited to the Bank's investment of the Trust assets.  The Plaintiffs' assert they are entitled to documents concerning all of the Bank's fiduciary accounts, but this argument was already rejected by Judge Adelman.  He explicitly denied them a "fishing expedition" through the documents relating to unrelated fiduciary accounts at the Bank.[46]

---

[43] *Id.* at ¶ 10.

[44] *See* Plaintiffs' Brief at 8-9.

[45] *See* Hackett Declaration at ¶¶ 4-5.

[46] *See* Attachment 3 to Hackett Declaration at 3-4.

### G.    Request No. 14 Regarding the Formation of the Nations Funds.

Request No. 14 seeks all documents relating to the formation of the Nations Funds. These documents concern the establishment and overall operations of the Nations Funds. They bear no relation to the investment of Trust assets by the Bank. Therefore, they are not relevant. Additionally, even if the documents were relevant, they are likely available from the affiliates of the Bank that provide services to Nations.[47]  The Plaintiffs should not be allowed to demand information from Nations that they could just as easily obtain from the Bank. Finally, this is the same information that Judge Adelman ruled was irrelevant and need not be produced by the Bank

### H.    Request No. 15 Regarding Ratings of the Nations Funds.

Request No. 15 seeks all documents relating to the ratings of each Nations Fund by Morningstar, Lipper or any entity that evaluates the performance of mutual funds. This information is available in the public domain or from the entities conducting the evaluations. The Plaintiffs can obtain it from these sources just as easily as Nations can. Moreover, the case concerns only the Investment Trust assets in a small number Nations Funds over a two-year period, yet this request seeks information on all of the Funds since 1997. The Plaintiffs should not be permitted to place this burden on Nations.

### I.    Request Nos. 3, 16 and 17 Regarding the Investment Adviser and Operating Expenses of the Nations Funds.

Request Nos. 16 and 17 seek all documents relating to the selection of investment advisors and any analyses of investment adviser performance and operating expenses of the Nations Funds. This information is not relevant to the Plaintiffs claims. Moreover, it is not even

---

[47] *See* Hackett Declaration at ¶ 5.

limited to the Funds or time frames in which assets of the Trusts were invested. Further, responsive materials prepared for Nations by the Bank affiliate serving as its advisor are in the Bank's custody.[48] If relevant, the Plaintiffs could seek the documents from the Bank. However, Judge Adelman has already ruled the information is irrelevant and need not be produced by the Bank.

### J.    Request No. 18 Regarding Communications Between Nations and the Bank or BAC.

Request No. 18 seeks all documents relating to communications between Nations and the Bank or BAC (including its subsidiaries or affiliates). This request is plainly unreasonable. It is intentionally written without any limitation and far exceeds the scope of the Plaintiffs' claims. It would be oppressive to require Nations to comply with this overly broad request.

---

[48] *Id.*

## CONCLUSION

For the foregoing reasons, Nations respectfully requests that this Court deny the Motion

to Compel.

March 9, 2005                           THE BAYARD FIRM

                                        Richard D. Kirk (#922)
                                        Cheryl Siskin (#3437)
                                        222 Delaware Avenue, 9th Floor
                                        Wilmington, Delaware  19801
                                        (302) 655-5000

                                        **Attorneys for Third Party Nations Funds Trust**

OF COUNSEL:

Stephen M. Colangelo
MORRISON & FOERSTER LLP
1650 Tysons Boulevard, Suite 300
McLean, VA  22102
(703) 760-7700

**EXHIBIT 1 TO
MEMORANDUM OF
THIRD PARTY NATIONS FUNDS TRUST
IN OPPOSITION TO PLAINTIFFS'
<u>MOTION TO COMPEL</u>**

# MORRISON & FOERSTER LLP

| | ATTORNEYS AT LAW | |
|---|---|---|
| SAN FRANCISCO | | NEW YORK |
| LOS ANGELES | | WASHINGTON, D.C. |
| DENVER | 1650 TYSONS BOULEVARD, SUITE 300 | NORTHERN VIRGINIA |
| PALO ALTO | McLEAN, VIRGINIA 22102 | LONDON |
| WALNUT CREEK | TELEPHONE (703) 760-7700 | BRUSSELS |
| SACRAMENTO | TELEFACSIMILE (703) 760-7777 | HONG KONG |
| CENTURY CITY | | BEIJING |
| ORANGE COUNTY | | SHANGHAI |
| SAN DIEGO | | SINGAPORE |
| | | TOKYO |

February 17, 2005

Writer's Direct Contact
703/760-7702
SColangelo@mofo.com

Steven M. Hamburg
Summers, Compton, Well & Hamburg
Professional Corporation
8909 Ladue Road
St. Louis, Missouri 63124

Re:  Kutten V. Bank of America, N.A., Case No. 4:04-CV-244 – Subpoena to
Nations Funds Trust

Dear Mr. Hamburg:

I am writing in response to your letter dated February 11, 2005.  I was alerted by counsel to the Bank of America that you had filed a motion to compel, but I have not received a copy from you and to my knowledge Nations Funds Trust ("Nations") has not been served.

As I explained to you and Richard Greenfield previously, your subpoena imposes a tremendous burden on Nations, which is a non-party to this litigation.  The requests are vastly overbroad and most of the documents that are relevant to your litigation are available from other parties in the litigation.  However, despite my repeated requests that you first obtain relevant documents from the parties to the litigation and narrow and focus your requests to minimize the burden that you are imposing on Nations as a non-party, you have refused to do so.  You have also refused to agree to compensate Nations for its reasonable expenses in producing the documents.

When you contacted me by telephone to discuss the subpoena, you addressed only the subpoena request relating to the relationship of the Nations Trustees to the Bank of America.  I explained to you that the information on the relationship of the Trustees to the Bank of America was available in public filings.  You may access those public filings at the following web sites:

va-93522

## MORRISON & FOERSTER LLP

Steven M. Hamburg
February 17, 2005
Page Two

http://www.sec.gov/Archives/edgar/data/1097519/000095014403009149/g8405
6e485bpos.txt

http://www.sec.gov/Archives/edgar/data/1097519/000095014404007508/g9010
5e485bpos.txt

If after examining publicly available documents and conferring with the parties to the litigation, you believe that Nations possesses a reasonable number of specific documents that are not otherwise available to you **and** are relevant to your litigation, I would be more than willing to discuss their production. If I can be of any further assistance on this matter, do not hesitate to contact me.

Sincerely,

Stephen M. Colangelo

cc:    Richard Greenfield
       Mary Hackett

va-93522

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that, on March 9, 2005, he electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will send automatic notification of the filing to the following

Sidney S. Liebesman, Esquire
Grant & Eisenhofer, P.A.
1201 North Market Street
Suite 2100
Wilmington, DE  19801


The undersigned counsel further certifies that copies of the foregoing document were sent by first class mail to the following non-registered participants:

Gregory B. Jordan, Esquire
Mary J. Hackett, Esquire
Sharon L. Rusnak, Esquire
Reed Smith, LLP
435 Sixth Avenue
Pittsburgh, PA  15219

Jeffrey S. Russell, Esquire
Jason E. Maschmann, Esquire
Bryan Cave LLP
One Metropolitan Square
211 N. Broadway, Suite 3600
St. Louis, MO  63102


Richard D. Kirk (Bar I.D. 922)