# ATTACHMENT 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ELLEN JANE KUTTEN, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 4:04-CV-244 |
| ) | |
| BANK OF AMERICA, N.A., et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |
| ) | |
| ) | |
| LINDA P. BARNHART, et al. ) | |
| ) | |
| Plaintiffs, ) | Cause No. 4:04-CV-1150 |
| ) | |
| ) | |
| v. ) | |
| ) | |
| BANK OF AMERICA, N.A., et al. ) | |
| ) | |
| ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION TO COMPEL DEFENDANTS TO
ANSWER PLAINTIFFS' FIRST SET OF INTERROGATORIES**

I.    **NATURE OF THE MATTER BEFORE THE COURT**

The instant motion seeks entry of an Order compelling Defendants to respond to

Plaintiffs? First Set of Interrogatories in full and without further objections within 30

days.

.

1

## II.  STATEMENT OF FACTS

This class action and others to be filed in this Court relate to the same subject matter; i.e. the defendants? abuse in their management of and control over the assets in fiduciary accounts of which defendant Bank of America, N.A. (the ?Bank?) is corporate fiduciary.[1]

In connection therewith, plaintiffs will, in due course, be seeking certification of a nationwide Class consisting of the beneficiaries of the Bank?s fiduciary accounts. In this regard, and to carry out the substantive discovery necessary to prepare their case for trial, plaintiffs have propounded and served upon defendants various sets of written discovery, as well as having served subpoenas on non-parties and commenced the taking of depositions.

In this context, on August 19, 2004, plaintiffs served their First Set of Interrogatories Directed to Defendants (?Interrogatories?) consisting of 15 pointed questions to provide background information with respect to, inter alia, the sources of assets which comprise Defendants' proprietary Nations Funds. And other substantive information related to plaintiffs? claims.

Following extensions granted by plaintiffs as a professional courtesy, on October 5, 2004, defendants served their Responses and Objections thereto. Despite the importance of these Interrogatories and the honest answers to which plaintiffs were entitled, which would serve as a platform to enable plaintiffs to file their motion seeking certification of the Class, the Responses and Objections amounted to a slap in the face. Defendants did not provide a single answer, made baseless objections to terms commonly

---

[1] It is anticipated that other similar actions will be filed shortly and/or incorporated into a Consolidated Complaint.

used by them and/or were fully comprehensible in context, and otherwise objected to everything. See Defendants? Responses and Objections attached hereto as Exhibit ?A?, which contain the Interrogatories.

Following defendants? provocative response, plaintiffs requested a ?meet and confer? in the hope that there would be some change in the defendants? wholly obstructionist and scorched-earth position.  On October 26, 2004, a conference call was set up among most counsel. As set forth in the Declaration of Richard D. Greenfield, Esq. plaintiffs? Lead Counsel, filed concurrently herewith, (?Greenfield Declaration?), despite plaintiffs? efforts to eliminate or minimize defendants? objections by narrowing the scope of certain interrogatories and/or further explaining the terms used, even where defense counsel undoubtedly understood their meaning, defendants refused to answer the Interrogatories and/or provide minimally useful answers tailored to their own modification of the Interrogatories to suit their purposes. In light of the foregoing, plaintiffs have little choice but to seek relief from the Court pursuant to Rule 37, Fed. R. Civ. P.[2]

### A.    The General Objections

Defendants have utilized largely form General Objections (17 of them) that state, inter alia, ?Without waiving this objection, Defendants have attempted to respond to the Interrogatories in a meaningful way? (General Objection 1). Contrary to their expressed intent, defendants gave no meaningful response to any of the Interrogatories. Plaintiffs

---

[2] As indicated in the Greenfield Declaration, plaintiffs anticipate filing a similar Motion to Compel addressed to defendants? responses and non-responses to certain of the many document requests served upon them. As will be demonstrated in such Motion, of the 7 boxes of documents produced by defendants, clearly 99% of the contents thereof amount to tabular presentations which would have been useless as they existed but were rendered even more so by defense counsel?s redaction of portions thereof and failing to indicate what documents were responsive to each request. None of such redactions can be justified given the defendants? insistence on the Court entering an Order protecting the confidentiality of documents produced in this litigation.

have set forth below some examples of the defendants? disregard of their obligations, which should provide the Court more than enough support for the granting of the instant motion.

Defendants further object to each and every individually defined term, the definitions of which are set forth in the Amended Complaint in the Kutten action, as well as to the most basic of terms, some of which are used regularly by defendants. For example, General Objection 12 states: ?Defendants object to the definitions of ?Defendant? and ?Defendants? because these definitions are overly broad and ambiguous.? Curiously, and perhaps not surprisingly, as stated in the Greenfield Declaration, defense counsel sought no clarification of the meaning of these terms.

Similarly, the defendants objected cavalierly to the use of the term ?Bank? when the Bank, as defined in the Complaints, means ?Bank of America, N.A.? Although the Complaints in this litigation make reference to various other banks that have been acquired over the years (defined as ?Acquired Banks?), the defendants undoubtedly know what is meant by this basic term.  Further, defendants take the position that, by merger, each of the Acquired Banks were merged into and became part of the Bank. See Greenfield Declaration at paragraph 3.

The defendants? General Objection 4 is not only ?boilerplate?, but also claims supposed privileges that do not exist. Defendants state:

> Defendants generally object to Plaintiffs? Requests to the extent that they seek documents protected by the attorney-client privilege, the attorney work-product doctrine, the accountant-client privilege, the self-critical analysis privilege or any other applicable privilege or protection.

Even if there is information contained in attorney-client privileged documents and/or attorney work product which was properly excluded from defendants? responses, defendants produced no log of any such excluded documents or information, leaving plaintiffs to guess what information and documents are being claimed by this baseless General Objection.

Defendants, in several of their General Objections, seek to self-limit the scope of discovery by failing to acknowledge that this is a nationwide class action involving the claims of beneficiaries of fiduciary accounts over which the Bank is or was corporate fiduciary. In General Objection 2, they object to providing information as to any member of the putative Class other than the named plaintiffs. They state that, ?because this case has not been and cannot properly be certified as a class action,? such discovery is not permitted. However, defendants make this objection disingenuously since they obviously know that plaintiffs have a burden to satisfy when they file their motion seeking class certification; namely, to demonstrate, through documents, testimony and information from other sources,  that, inter alia, their claims are typical of those of the other members of the putative Class. As long as they have made the allegation, as they have done here in the Kutten Amended Complaint (as well as in the Barnhart Complaint)  that there is a good faith basis for alleging that all the prerequisites for class certification are satisfied, plaintiffs should be permitted to take the discovery necessary to demonstrate this to the Court.  See *Newberg on Class Actions* § 7:2(4th ed.) (?...a defendant?s challenges to facts pertinent to a class determination may be readily verifiable from information possessed by the defendant...[the plaintiff] ordinarily will need to undertake discovery of the defendants...to counter such challenges.?).  Alternately, if defendants are prepared to

5

accept plaintiffs? Class Action Allegations in the Complaints as true, which they will not,

then much of such discovery is not necessary.

Defendants?attempt to turn Rule 23 on its head in advance of discovery as to the

very evidence plaintiffs will want to show the Court is simply incomprehensible. At the

end of General Objection 2, they make a further statement that flies in the face of the

clear Class Action Allegations in the Amended Complaint. They state:

> Plaintiffs? counsel?s pursuit of irrelevant and unduly burdensome class-
> wide discovery  cannot alter the fact that proof of liability and/or proof of
> any claim will vary from trust to trust based upon each trust?s particular
> terms and circumstances.

Putting aside defendants? unilateral attempt to limit the plaintiffs? claims solely to

trusts, as distinct from all types of fiduciary accounts, as alleged in the Amended

Complaint, defendants make a bald-faced statement that, aside from its lack of truth, begs

the question. Whether proof of liability and/ or any claims generally are class-wide are

central issues in this litigation. Defendants cannot avoid discovery thereupon with a

simple wave of their collective hands.

In General Objection 6, defendants assert an objection based upon purported

confidentiality grounds. They state:

> Defendants object to each and every Interrogatory because [they] seek
> disclosure of private, confidential, proprietary and/or trade secret
> information?including?information concerning Defendants? customers,
> business practices and pricing.

Defendants insisted on the Court?s entry of a protective order to govern the

production of purportedly confidential documents or information. While plaintiffs?

counsel felt and still feel that the Order signed ultimately by the Court (despite plaintiffs?

stipulation thereto) is unduly broad, defendants? documents and information have all the

protection they really need. Thus, to object on the basis of a concern about confidentiality

is incomprehensible.

In any event, Defendants go on to say:

> In light of the protective order, Defendants will not withhold information
> [which they have, in fact, done] based upon this objection, except for
> information which could invade the privacy interests of customers not a
> party to this litigation or employees. In that instance, Defendants will
> redact that information and advise Plaintiffs accordingly.

Given the existence of the protective order, defendants have no right to unilaterally

withhold any information, let alone redact portions of documents, as they have already

done on a wholesale basis in the first seven boxes of documents produced. See paragraph

4 of Greenfield Declaration.

Lastly, defendants aggressively attack, in their General Objection 17, defined

terms that are not only clear from the context of the Interrogatories but in the Amended

Complaint itself. They state condescendingly:

> Defendants object to the definition of ?Acquired Banks? and ?Nations
> Funds? as vague, ambiguous, overly broad and NONSENSICAL.
> [Emphasis supplied.]

It is, regrettably, a frequent practice for parties to serve ?boilerplate? General

Objections before actually responding to written discovery. Here, however, defendants?

General Objections, as comprehensive and offensive as they are, only serve as an

appetizer to the main course, totally non-responsive purported answers.

IV.    **QUESTION PRESENTED**

Should the Court enter the Order Compelling Responses to Plaintiffs? First Set of Interrogatories?

V.    **ARGUMENT**

**A.    A Party Serving Requests For Admissions May Move To Compel Responses If a Response Is Evasive Or Incomplete, Or An Objection Is Improperly Interposed.**

According to Rule 37 of the Federal Rules of Civil Procedure,

(3) Evasive or Incomplete Disclosure, Answer, or Response. For purposes of this subdivision an evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond.

Subsection two of Rule 37 describes that if a party fails to answer an interrogatory propounded under Rule 33, the propounding party may move for an order compelling an answer.  Fed. R. Civ. Proc. 37.

In the instant action, plaintiffs propounded 15 interrogatories to defendants to which the defendants responded evasively and incompletely.  By way of example and not limitation, several of the Interrogatories and the specific reasons why defendants should be ordered to further respond are identified below. Should the Court Order the defendants to answer the Interrogatories in full, as plaintiffs urge the Court to do, and they fail to do so, plaintiffs will then ask the Court to impose appropriate sanctions against defendants.

8

**B.      The Responses And Specific Objections**

**Interrogatory No. 1:**

     For each state in which you do Business, state the number and type of Fiduciary Accounts which you (or an Acquired Bank) serve/served as Trustee at the end of each year for the period of 1997 to the present.

**Response to Interrogatory No. 1:**

     In addition to the General Objections, Defendants object to this Interrogatory as being vague, ambiguous, overly broad, and unduly burdensome.  Defendants further object because this Interrogatory goes far beyond the scope of the litigation concerning assets invested in common trust funds originally established by Boatmens and Bank of America.  Subject to and without waiving the foregoing objections and in the interest of trying to be cooperative in the discovery process, Defendants will produce documents which reflect the state and number of the trusts that participated in the investment change for which certain assets held in common trust funds established by Boatmens and Bank of America respectively were exchanged for shares of Nations Funds.

**Argument to Compel Response:**

     Defendants seek to further limit the Interrogatory, the answers to which are needed to enable plaintiffs to satisfy their obligations to demonstrate numerosity and typicality in the context of their anticipated class certification motion. Not only do defendants object to a crystal clear Interrogatory but they unilaterally say they will only respond with respect to Boatmens Trust and Bank of America, only two of the many banks acquired by Nations Bank, N.A. re-named Bank of America, N.A.  The Class is

defined to include ALL the beneficiaries of ALL fiduciary accounts (not merely trust accounts) who were damaged by the defendants? wrongful activities, as described in the Amended Complaint. Defendants would simply re-write the Interrogatory to suit their own purposes and frustrate plaintiffs? ability to conduct discovery necessary for class certification purposes.

Further, even as to the relatively narrow response they say they will provide, they refused, at the ?meet and confer,? to say when they would provide answers. See Greenfield Declaration at paragraph 2.  In addition, when specific information is sought, defendants? counsel want to avail themselves of the opportunity to produce documents which will provide the answers plaintiffs seek.  While they are entitled to do just that, defendants cannot do what it appears they are planning to do; i.e. dump thousands of pages of documents on plaintiffs and tell plaintiffs? counsel, as they have already done in connection with the seven boxes of documents produced, the information is in there somewhere. Greenfield Declaration at paragraph 5..

**Interrogatory No. 2:**

For each state in which you do Business, state the number of Fiduciary Accounts which own/owned shares of a Nations Funds mutual fund at the end of each year for the period of 1997 to the present.

**Response to Interrogatory No. 2:**

Defendants incorporate their Answer and Objections to Interrogatory No. 1 as if set forth in full.

**Argument to Compel Response:**

Defendants have provided, once again, a ?boilerplate objection? but no answers to a straightforward and simple Interrogatory, the content of which is necessary for plaintiffs to satisfy their class certification burdens, particularly since plaintiffs have already alleged state-wide sub-Classes and will undoubtedly ultimately have at least as many as ten such sub-Classes. With respect to each such sub-Class, plaintiffs will be obligated to demonstrate numerosity, among other evidence bearing upon the issue of class certification. Thus, defendants? specific objections are baseless and unjustified.

**Interrogatory No. 3:**

For each state in which you do Business, state the amount of money invested from Fiduciary Accounts into each of the Nations Funds mutual funds at the end of each year for the period of 1997 to the present.

**Response to Interrogatory No. 3:**

Defendants incorporate their Answer and Objections to Interrogatory No. 1 as if set forth in full.

**Argument to Compel Response:**

Defendants have provided, once again, a ?boilerplate objection? but no answers to a straightforward and simple Interrogatory, the content of which is necessary for plaintiffs to satisfy their class certification burdens, particularly since plaintiffs have already alleged state-wide sub-Classes and will undoubtedly ultimately have at least as many as ten such sub-Classes. With respect to each such sub-Class, plaintiffs will be obligated to demonstrate numerosity, among other evidence bearing upon the issue of class certification. Thus, defendants? specific objections are baseless and unjustified.

**Interrogatory No. 4:**

Itemize by each type of Fiduciary Account maintained by the Bank the dollar amount and percentage of Fiduciary Funds invested in each of the Nations Funds mutual funds at the end of each year for the period of 1997 to the present.

**Response to Interrogatory No. 4:**

In addition to the General Objections, Defendants object to this Interrogatory as being vague, ambiguous, overly broad, and unduly burdensome. Defendants further object because this Interrogatory goes far beyond the scope of the litigation concerning assets invested in common trust funds originally established by Boatmens and Bank of America. Subject to and without waiving the foregoing objections and in the interest of trying to be cooperative in the discovery process, Defendants will produce documents which reflect the state and number of the trusts that participated in the investment change for which certain assets held in common trust funds established by Boatmens and Bank of America respectively were exchanged for shares of Nations Funds.

**Argument to Compel Response:**

Defendants will undoubtedly argue, in their opposition to class certification, that each type of fiduciary account for which the Bank serves as corporate fiduciary has different investment objectives and permissible investments. By this Interrogatory, plaintiffs expect to be able to show, in comparison to the assets of personal trusts invested in the various Nations Funds, that there are no MATERIAL differences among any of the different types of fiduciary accounts insofar as their various investments are concerned. Having the information sought by the Interrogatory will better enable plaintiffs to counter defendants? opposition to class certification.

**Interrogatory No. 5:**

Please identify by account number and state in which beneficiaries reside of all Fiduciary Accounts which hold/have held Nations Funds at any time during the period of 1997 to the present in which assets or property held in such Accounts were liquidated and the proceeds invested in Nations Funds shares, and, if any, indicate the source of funds used to acquire the Nations Funds shares.

**Response to Interrogatory No. 5:**

In addition to the General Objections, Defendant object to this Interrogatory because it requires disclosure of confidential information protected by state and federal privacy laws. Defendants further object to the Interrogatory as being vague, ambiguous, overly broad, and unduly burdensome. Finally, Defendants object because this Interrogatory goes far beyond the scope of the litigation concerning assets invested in common trust funds originally established by Boatmens and Bank of America.

**Argument to Compel Response:**

While this interrogatory is admittedly broad, defendants will not provide any indication when they will provide any of the answers sought, even for Boatmens Trust and Bank of America. Further, in the ?meet and confer,? defense counsel provided plaintiffs with no indication as to how the Interrogatory might be narrowed so that a response would be forthcoming.

**Interrogatory No. 6:**

State in six-month intervals (e.g. on 1/1/97, 7/1/97, 1/1/98, 7/1/98 etc.) from 1997 to the present, the total amounts of investment (both in dollars and percentages) of

Fiduciary Funds in each of the Nations Funds and for each date, state the total asset value of each such fund.

**Response to Interrogatory No. 6:**

In addition to the General Objections, Defendants object to this Interrogatory as being vague, ambiguous, overly broad, and unduly burdensome. Defendants further object because this Interrogatory goes far beyond the scope of the litigation concerning assets invested in common trust funds originally established by Boatmens and Bank of America. Defendants object to the term ?each such fund? as being vague, ambiguous and nonsensical. Finally, Defendants object to this Interrogatory because it seeks information that is neither relevant nor calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections and in the interest of trying to be cooperative in the discovery process, Defendants will produce documents which reflect the state and number of the trusts that participated in the investment change for which certain assets held in common trust funds established by Boatmens and Bank of America respectively were exchanged for shares of Nations Funds.

**Argument to Compel Response:**

The information sought by this Interrogatory is needed for plaintiffs? class certification motion. At the ?meet and confer,? plaintiffs? counsel offered to modify the Interrogatory?s dates to any dates for which the defendants had the requested information. Although the defendants undoubtedly have the information sought and can probably obtain it by and through their enormously powerful computers, defense counsel, Mary Hackett, said at the ?meet and confer?: ?I don?t know if we have this information.? After she was prodded further, she would only commit to ?ask around.? But she would not

commit to provide any answers to plaintiffs. In the approximately 6 weeks since the

?meet and confer,? plaintiffs are left to guess whether Ms. Hackett received any answers.

**Interrogatory No. 7:**

Indicate, by category of investor, who owns the percentage of the Nations Fund

not owned by or on behalf of the Fiduciary Accounts (i.e., the Bank, another bank or trust

institution, private individual investor, brokerage house, insurance company etc.) at the

end of each year for the period 1997 to the present.

**Response to Interrogatory No. 7:**

In addition to the General Objections, Defendants object to this Interrogatory as

being vague, ambiguous, overly broad, and unduly burdensome.  Defendants further

object because this Interrogatory goes far beyond the scope of the litigation concerning

assets invested in common trust funds originally established by Boatmens and Bank of

America.  Subject to and without waiving the foregoing objections and in the interest of

trying to be cooperative in the discovery process, Defendants will produce documents

which reflect the state and number of the trusts that participated in the investment change

for which certain assets held in common trust funds established by Boatmens and Bank of

America respectively were exchanged for shares of Nations Funds.

**Argument to Compel Response:**

The information sought by this Interrogatory is needed in connection with

plaintiffs? forthcoming motion for class certification, as well as for the merits of

plaintiffs? claims.  Plaintiffs expect to show, inter alia, that the Bank, for its fiduciary

accounts, made substantial percentages of the investments in the Nations Funds and that

relatively small percentages of other investors (who could act independently) selected the

15

Nations Funds as worthwhile investment vehicles. Defendants provided no answer other than the gratuitous and essential useless suggestion contained at the end of their ?response.?

As indicated, the response of the Defendants set forth above are illustrative of Defendants' dodging and weaving repeated in the objections lodged to the remaining 7 interrogatories. Defendants' failure to provide full and complete (or any) answers is exactly the conduct Fed Rule 37 is intended to prevent.  Plaintiffs are entitled to an Order compelling responses and, failing that, appropriate sanctions.

### C.    Defendants Have Failed To Comply With the Federal Rules Regarding Verification of the Answers and Objections Provided

Rule 33 of the Federal Rules provides that answers to interrogatories are to be signed under oath by the person making them and Rule 37 provides that a party failing to do so is subject to the imposition of sanctions.  The "verification" provided by the Defendants to the answers and objections they furnished is purportedly signed by "Lori McCarthy-Lopez," "V.P Business Support Manager."  The verification is not dated and the employer of Ms. McCarthy-Lopez is not stated nor is an address provided. Moreover, initials appear to the right of Ms. McCarthy-Lopez's signature and it is unclear whether the "Verification" was signed by her or a surrogate. In fact, when asked about this very topic during the "meet and confer," defense counsel expressed ignorance as to whether it was, in fact, signed by Ms. McCarthy-Lopez and whose or why initials appeared on the margin.

16

**D. Conclusion**

For the reasons aforesaid, Plaintiffs request that this Court enter an Order in the

form submitted herewith compelling appropriate and meaningful answers to all of the

plaintiffs? Interrogatories.

November 15, 2004                    SUMMERS, COMPTON, WELLS & HAMBURG
                                     PROFESSIONAL CORPORATION

                                     /s/ Steven M. Hamburg                              
                                     STEVEN M. HAMBURG          #3313
                                     HOLLY M. MCINTYRE          #112203
                                     8909 Ladue Road
                                     St. Louis, MO 63124
                                     (314) 991-4999
                                     (314) 991-2413 (Fax)

                                     GREENFIELD & GOODMAN LLC
                                     RICHARD D. GREENFIELD
                                     7426 Tour Drive
                                     Easton, MD 21601
                                     (410)745-4149
                                     (410) 745-4158 (Fax)

                                     GANCEDO & NIEVES LLP
                                     Hector G. Gancedo
                                     Amy M. Boomhouwer
                                     144 W. Colorado Blvd.
                                     Pasadena, CA 91105
                                     (626) 685-9800
                                     (626) 685-9808 (fax)

                                     LERACH, COUGHLIN, STOIA, GELLER,
                                     RUDMAN AND ROBBINS, LLP
                                     Nicole R. Avallone
                                     Jonathan Stein
                                     197 S. Federal Highway, Suite 200
                                     Boca Raton, FL 33432
                                     (561) 750-3000
                                     (561) 750-3364 (Fax)

COUNSEL FOR PLAINTIFFS AND THE CLASS

**CERTIFICATE OF SERVICE**

I hereby certify that on this  15th   day of November, 2004, I caused a copy of the foregoing to be served upon Defendants? counsel via U.S. first-class mail, postage prepaid, and addressed as follows:

Jeffery S. Russell, Esq.
Jason E. Maschmann, Esq.
Bryan Cave LLP
One Metropolitan Square
211 N. Broadway, Suite 3600
St. Louis, MO 63102

Gregory B. Jordan, Esq.
Mary J. Hackett, Esq.
Sharon L. Rusnak, Esq.
Reed Smith, LLP
435 Sixth Avenue
Pittsburgh, PA 15219

_____/s/ Steven M. Hamburg_____

373313_1

18

**ATTACHMENT 2**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ELLEN JANE KUTTEN and<br>MARY ANN ARNOLD,<br>on behalf of themselves and all others<br>similarly situated, | )<br>)<br>)<br>) | Case No. 4:04-CV-244 TIA |
| | ) | |
| Plaintiffs, | ) | |
| v. | )<br>) | |
| BANK OF AMERICA, N.A. and<br>BANK OF AMERICA CORPORATION, | )<br>)<br>) | |
| Defendants. | )<br>) | |

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO
## PLAINTIFFS' MOTION TO COMPEL

### I. INTRODUCTION

Pending before this Court is Plaintiffs' Motion to Compel Defendants to respond further to 15 interrogatories that go far beyond the scope of this litigation. Plaintiffs open their Memorandum in support of their Motion noting that this action "and others to be filed in this Court relate to the same subject matter, i.e. the defendants' abuse in their management of and control over the assets in fiduciary accounts of which defendant Bank of America, N.A. (the "Bank") is corporate fiduciary." Plaintiffs' Memorandum at 2. To the contrary, the claims, as pled in the Amended Complaint, involve discrete, individual issues surrounding the management of certain individual trust assets and investment of those assets in mutual funds. Defendants are producing all relevant documents, including information as to the accounts potentially at issue.

Plaintiffs, however, baldly claim in their Motion that the Bank "abused" its customers and is abusing the discovery process, and as a result, Plaintiffs are entitled to any and all discovery they desire. Plaintiffs make this claim hoping to turn this into a "discovery abuse" case in an attempt to sidetrack the coming dispositive motion. Allegations of "abuse" simply are not set forth in the Amended Complaint. Moreover, the threat of "other cases to be filed" certainly does not provide the basis for unfettered discovery in this action. In evaluating Plaintiffs' Motion, Defendants ask this Court to do nothing more than read the Amended

Complaint. The allegations simply do not provide a basis to compel further responses to Plaintiffs' Interrogatories.

Plaintiffs seek a voluminous and burdensome amount of discovery with respect to *every* "Fiduciary Account," which Plaintiffs broadly define to include all trusts, retirement accounts, IRAs and far more, with Bank of America during the past seven years (approximately 80,000 personal trust accounts alone). Plaintiffs seek this discovery although this case raises issues as to only a fraction of these accounts for a two-year time frame. Plaintiffs also seek detailed financial information about 70 Nations Funds mutual funds, despite the fact that these funds are not parties in this proceeding and the information requested has no bearing on Plaintiffs' claims.

In this Memorandum, Defendants offer a detailed explanation of the transactions at issue and Plaintiffs' allegations to demonstrate to the Court the overly broad and irrelevant scope of Plaintiffs' Interrogatories. Further, as also outlined below, Defendants have reviewed and provided an extensive amount of information in response to prior discovery requests. Defendants' counsel have spent more than 10 hours on conference calls with Plaintiffs' counsel discussing and attempting to resolve discovery issues – and many issues have been resolved. Plaintiffs have been persistent but cooperative and willing to compromise on these calls. However, with the last call concerning the interrogatories at issue, Plaintiffs refused to discuss the questions posed, insisting that Defendants withdraw all objections and respond in full. Plaintiffs are now trying to paint Defendants and their counsel as obstructionist, hoping to gain some tactical advantage. Plaintiffs' slanderous rhetoric about Defendants and their counsel is unfortunate, unnecessary and certainly does not provide a basis to compel overly broad and irrelevant discovery.

As set forth below, because the interrogatories at issue here go far beyond the issues as pled in this case, would be terrifically burdensome and are unnecessary given the extensive amount of information already provided, Defendants request that this Court deny Plaintiffs' Motion to Compel.

## II.    THE CLAIMS IN THIS CASE, PLAINTIFFS' DISCOVERY AND DEFENDANTS' RESPONSES

**The "Conversions."** The allegations in the Amended Complaint do not delineate

"abuse" in management and control of fiduciary accounts.[1] The Amended Complaint focuses on

the conduct of the Bank, as a trustee, in converting certain assets of two trusts at issue from

investments in common trust fund vehicles to investments in the Bank's affiliated mutual funds.

Plaintiffs Kutten and Arnold are or were beneficiaries of certain trusts in which assets were

invested in common trust funds and then later invested in affiliated mutual funds.[2]

In 1996, Congress enacted legislation that permitted trustees to convert trust assets

invested in common trust fund vehicles to investments in affiliated mutual funds without

incurring capital gains tax consequences for the trust. 26 U.S.C. §584(h).[3] Thereafter, the laws

of virtually every state, including the state laws applicable here - California and Missouri - were

amended to permit the conversions.  Further, nearly every major bank undertook common trust

fund conversions, including the Bank.  Indeed, under California law, it is not considered

actionable or self-dealing for a bank/trustee to invest trust assets in affiliated mutual funds so

long as notice and a prospectus is provided to the person to whom account statements must be

provided.  Cal. Fin. Code § 1561 (West 2003).  Similarly, Missouri law permits the conversion

but does not require notice.  Mo. Rev. Stat. 363500.11.

The conversion of trust assets from investments in common trust funds to mutual fund

investments provided trust customers with several benefits, including daily valuation and

---

[1]    For the Court's convenience, a copy of the Amended Complaint is attached as Exhibit 1.

[2]    Although Plaintiffs seek information from 1997 to the present in their Interrogatories, the conversion of some of the assets of the trusts for which Ms. Kutten was a co-trustee and beneficiary took place in 2000.  In 2002, some of the assets of the trust for which Ms. Arnold is the beneficiary were converted from common trust fund investments to investments in affiliated funds.  Ms. Arnold raises no claims of wrongdoing after that date.  Further, the Bank resigned as trustee with respect to the Kutten trusts at issue in late 2003 before this litigation was filed.  The universe of time at issue here with respect to the class allegations spans from 2000-2002.

[3]    As defined in that statute, a "common trust fund" means, among other things, a fund maintained by a bank exclusively for the collective investment and reinvestment of moneys as a trustee.  Id. §584(a)(1).

liquidity, newspaper performance listings (i.e., customers could not look up the daily valuations of common trust funds in the newspaper), broader potential diversification, and flexibility when making trust distributions, including in-kind transfers without capital gains tax consequences if the trust was liquidated.

Not all of the Bank's trust customers had assets that were converted. For those that were, the Bank, at different times, notified its customers, in various manners and formats, of the proposed conversion. Ms. Arnold, for example, does not dispute that she received notice in 2002, and indeed, she contacted the Bank to ask questions about the conversion. Exhibit 2. Surprisingly, Ms. Kutten denies in the Amended Complaint that she received notice, when in fact in 2000 she expressly authorized the Bank to take the trust investment assets out of common trust funds and invest them in affiliated mutual funds. Exhibit 3. ("I also authorize the investment of Account assets in the [Nations] Fund(s) in order to replace common trust fund investments currently used for the Account."). The notice to Ms. Arnold also confirmed that the Bank would (and did) provide a trustee fee credit, so that the Bank would not "double dip" on fees as alleged in the Amended Complaint. See Amended Complaint ¶ 23. The Bank similarly provided a trustee fee credit to the trusts for which Ms. Kutten served as co-trustee and beneficiary.

In addition to both federal and state law authorizing the conversion of Plaintiffs' trust assets, the trust instruments at issue with respect to the named Plaintiffs gave the Bank broad investment discretion. Id. ¶ 17(a). It was for this reason that the first Federal Judge reviewing Ms. Arnold's claims expressed doubt as to whether a class could be certified because of the individual analysis required here. Exhibit 4 at pp. 4-9; Id.[4] Thereafter, Ms. Arnold sought to dismiss her previous action to join this action.

---

[4]    Ms. Arnold originally filed her claims before the United States District Court for the Central District of California. On March 8, 2004, a Rule 26(f) scheduling conference was held in that action. At the conference, the Court questioned Plaintiffs' counsel at length about the validity of the claims and noted that the Court had its doubts about certifying a class because of the predominating individual issues. See Exhibit 4 at pp. 4-9, 12. Thereafter, Ms. Arnold dismissed her California action to join this action.

**Plaintiffs' Allegations.** As Plaintiffs outline in the "Introduction" of the Amended Complaint, the propriety of the conversion of assets invested in common trust funds to investments in affiliated mutual funds is at the heart of this case:

> In particular, in order to maximize the Bank's profits earned from trusts, guardianships, estates and other fiduciary accounts (collectively "Trusts") by which it acted as fiduciary, the Bank conspired with its affiliates and others presently unknown in a business decision to "double dip" by forcing trusts and other fiduciary accounts under the care of the Bank to have their assets re-directed from their historic allocations in individually managed accounts and/or so-called Common Trust Funds and/or other assets, to proprietary mutual funds controlled by subsidiaries of the Bank's parent. … As used herein, the term "Conversion" refers to such wholesale asset re-direction by the Bank into shares of the Nations Funds.

Exhibit 1 (Amended Complaint) ¶ 2. This alleged conduct clearly does not constitute "abuse" or provide a basis to fish for a claim beyond the allegations in the Amended Complaint. Because the devil is in the details here and relevancy is a critical issue with respect to evaluating Plaintiffs' Interrogatories, Defendants offer the following detailed analysis of Plaintiffs' Amended Complaint to demonstrate the limited universe of Plaintiffs' claims – and the fact that Plaintiffs have not pled a claim of "abuse."

| Amended Complaint Paragraph | Plaintiffs' Factual Allegations | Response |
|---|---|---|
| 3 | The Bank did not provide Plaintiffs with the individualized service they expected and as represented in advertisements. | While inflammatory, these allegations do not establish "abuse" of customers. (They also do not provide grounds for a legal claim). |
| 5 | The Bank's acquisitions "transmogrified" other banks into "cogs in the fee-generating machinery of the Bank." | Again, while inflammatory, these allegations do not show "abuse" (and again do not provide a basis for a legal claim). |
| 6 | As a result of the Bank's mergers, Plaintiffs' interests were not represented by caring, knowledgeable trust officers but by Call Centers in Dallas and elsewhere "manned by lower-level fungible functionaries." | Same, but also dead wrong. As surveys, testimonials and other data will show, the Bank's customers love the call service center in Dallas and the knowledgeable employees who service trust accounts from that location. |
| 7 | The Bank's acquisitions would materially impact the trusts. | Again, inflammatory, but it does not show "abuse." (Certainly not an issue that can be addressed on a common, class basis). |

| Amended Complaint Paragraph | Plaintiffs' Factual Allegations | Response |
|---|---|---|
| 8-9, 22 | The Bank did not provide Ms. Kutten and "others" with notice of the "transfer." | Not true and not actionable. Ms. Kutten did indeed know about the "transfer," because she signed express authorization. Exhibit 3. Further, this discrepancy shows the individual nature of this inquiry. |
| 10-12 | Description of Nations Funds Trust. | Nations Funds Trust is not a party to this action, and the allegations are irrelevant. |
| 17—20 | Description of the parties. | Plaintiffs claim that Ms. Kutten was "bounced" around the country, and the Bank allegedly lost her trust files. Even Ms. Kutten understands the individualized nature of any purported claims based upon these allegations – having brought them only on behalf of herself. See Counts 9-15. |
| 21 | The Bank plotted a scheme to save money by deciding to invest trust assets in its affiliated mutual funds, by converting assets invested in common trust funds to assets invested in mutual funds. The allegations center and focus on the conversion of assets invested in common trust funds into investments in affiliated mutual funds. | First, the Bank did not convert assets from common trust funds without complying with the laws of each state. Second, with respect to Ms. Kutten, she provided written authorization for the Bank to undertake these investments for the trusts at issue. Exhibit 3. Third, these allegations do not reflect "abuse." |
| 23-25 | Plaintiffs quote a notice the Bank provided to some customers concerning the "conversion" of assets invested in common trust funds and claim that the notices, which they fail to attach to the Amended Complaint, were deficient. | The clear focus of Plaintiffs' claims is the common trust fund conversions. The Bank's conduct was authorized by law, the trust instruments and Plaintiffs themselves. |
| 26 | Plaintiffs claim that the Bank failed to consider the best interests of its customers. | First, state and federal law permit the Bank to do what it did – recognizing the value to customers. Second, the allegations once again center around the common trust fund conversions and do not establish pervasive "abuse." Moreover, the Bank undisputedly provided a trustee fee credit where its trust customers invested in affiliated mutual funds. |
| 27 | The Bank did not consider other investments. | As the portfolios of the named Plaintiffs' trusts will show, the Bank did indeed consider other investments. Further, the trustee fee credit made affiliated mutual funds a far more attractive investment than other funds. Finally, once again, these allegations do not show "abuse." (This is clearly an |

| Amended Complaint Paragraph | Plaintiffs' Factual Allegations | Response |
|---|---|---|
| | | issue that must be addressed on a customer-by-customer basis). |
| 28-30 | The Bank invested trust assets in affiliated funds "as part of the Conversion" to generate more fees. "The foregoing Conversion" was part of a big scheme to make more money. | The law authorized the Bank's action. The Bank complied with state law requirements in implementing the conversions. Ms. Kutten consented to it. The Bank provided a fee credit to its trust customers. The allegations do not give rise to "abuse." |
| 31-35 | Nations Funds engaged in improper late trading and market timing activities. | Nations Funds are not parties here.[5] |

Plaintiffs seek extensive discovery as to *all* "Fiduciary Accounts," which they define to include all

> (1) Trusts, including, but not limited to testamentary trusts, marital trusts, irrevocable trusts, revocable living trusts, special needs and charitable trusts for which the Bank serves/served as Trustee in addition to Estates for which the Bank serves in a fiduciary capacity; (2) Retirement Accounts, including but not limited to, Individual Retirement Accounts, 401(k) Accounts or other accounts established pursuant to the Employment Retirement Security Act for which the Bank serves as Trustee; (3) Foundations, including but not limited to, 501(c)(3) Corporations for whom the bank serves in a fiduciary capacity; and/or (4) any other accounts for which the Bank serves in a fiduciary capacity.

Exhibit 5 at 4. The proposed class is far more limited. As defined by Plaintiffs, "[t]he class represented by plaintiffs consists of all persons who are, or were any time from the time of the *Conversion* to the present ("Class Period"), beneficiaries of *Trusts* for which the Bank is or was a fiduciary, the assets of which were 'converted' into shares of the Nations Funds." Exhibit 1 (Amended Complaint) ¶38 (emphasis added).[6]

---

[5]      Further, as Plaintiffs do not dispute, these allegations are part of a multi-district litigation ("MDL") proceeding in Maryland. Plaintiffs' counsel herein is class counsel for the Fiduciary Sub-Class in that proceeding. Whether discovery on those issues may move forward is currently being briefed in that proceeding. To the extent Plaintiffs press discovery on those issues in this action, Defendants will seek relief from the judge presiding over the MDL.

[6]      Plaintiffs define "Conversion" to include the Bank's "decision to 'double dip,' by forcing trusts and other fiduciary accounts under the care of the Bank to have their assets re-directed from their historic allocations in individually managed accounts and/or so-called Common Trust Funds and/or other assets, to proprietary mutual funds controlled by subsidiaries of the Bank's parent." Exhibit 1 (Amended Complaint) ¶ 2.

Plaintiffs' class issues speak to "the" Conversion – referencing the common trust fund conversion at issue and the Bank's investment decision related to that conversion.  Amended Complaint ¶¶ 42-45, 48-50.  Plaintiffs' attempt to broaden this case to *every* fiduciary account, attempting to expand the case and "conversion" to every instance where the Bank purchased affiliated mutual fund shares for its customers is simply contrary to the allegations.  Ms. Arnold's claims are limited to the conversion.  She raises no other allegations of improper conduct.  While Ms. Kutten raises service issues, she does so in her individual capacity.  See Amended Complaint, Counts 9-15.  Thus, by the very language of the Complaint and giving Plaintiffs every favorable construction here, Plaintiffs' claims are limited to "trust" customers whose assets were converted from investments in common trust fund vehicles to investments in affiliated mutual funds.

**Defendants' Discovery Efforts.**  Plaintiffs imply that Defendants offered to produce nothing in response to the Interrogatories but "junk."  To the contrary, Defendants agreed to produce information about a broad range of trust accounts which fall within the definition of the proposed class – including information for thousands of accounts reflecting the states in which the trusts are located, the types of fiduciary accounts, the number of accounts and the amount of money invested in common trust funds by each of these accounts.  This is an extensive amount of information, which provides the detailed information Plaintiffs are seeking as to the proposed class.  Exhibit 6 ¶ 5.

Further, Defendants have produced more than 50,000 pages of documents and intend to produce at least an additional 25,000 pages in the next 30 days.  These documents include:

> ➤ all non-privileged documents from files of Bank employees, who were involved with the conversions, referencing the various conversions of trust assets out of common trust funds.

> ➤ all non-privileged documents from files of Bank employees involved in common trust fund conversions wholly unrelated to the conversions of the assets of Plaintiffs' trusts at issue here.

> ➤ the trust files concerning the named Plaintiffs, which include more than 5,000 pages of documents.

> ➤    the Bank's code of ethics and trust policies and manuals.

> ➤    summary documents concerning the Trust Services Centers (the Bank's call centers in Dallas and Atlanta) , the Private Bank and many other topics which Plaintiffs insisted upon obtaining, regardless of relevance.

> ➤    reports which reflect the type of account, the state in which it was located and the amount of money invested in each common trust fund, broken down by account for each account where assets were invested in common trust funds and later invested in affiliated mutual funds.

> ➤    speeches and lobbying materials referencing common trust fund investment conversions.

By mid-December of 2004, Defendants will have reviewed nearly 500,000 pages of paper located in cities around the country to respond to Plaintiffs' continuing demands. Id. ¶ 5. From this information, Plaintiffs will know exactly how many accounts, the types of accounts, and the locations of accounts which had assets converted from common trust fund investments to affiliated mutual funds. They can also determine the total amount of trust assets invested in common trust funds and later invested in affiliated mutual funds. Id. ¶ 5.

In August, Defendants responded to more than 45 broad document requests in this case and in September and October spent more than 10 hours on conference calls with Plaintiffs' counsel resolving issues Plaintiffs have raised as to nearly every request. Id. ¶ 2. Both parties acted reasonably in attempting to reach compromises on the many broad requests. Tellingly, no issues as to those 45 document requests have been raised in Plaintiffs' Motion.

**Plaintiffs' Interrogatories**.[7] Although the conduct at issue took place in 2000 and 2002 for a limited universe of the Bank's *trust* customers, Plaintiffs seek *seven* years of information for *all* "Fiduciary Accounts"[8] at the Bank in *all* 50 states, including:

---

[7]    Although Plaintiffs reference "Requests for Admission" (Plaintiffs' Memorandum at 8), no such requests, to Defendants' knowledge, have been served in this matter. Plaintiffs do not attach to their Motion to Compel either a copy of the Interrogatories or a copy of Defendants' Responses. See Exhibits 5 & 7.

[8]    Plaintiffs' definition of "Fiduciary Accounts" is very broad, going far beyond the scope of this case, and includes: "(1) Trusts, including, but not limited to testamentary trusts, marital trusts, irrevocable trusts, revocable living trusts, special needs and charitable trusts for which the Bank serves/served as Trustee in addition to Estates for which the Bank serves in a fiduciary capacity; (2) Retirement Accounts, including but not limited to, Individual Retirement Accounts,
Continued on following page

1.      The number by "type" of "Fiduciary Accounts" at the Bank (defined to include all affiliates) in all 50 states whether they were included in the conversions at issue or not.  (No. 1)

        **Without waiving their objections, Defendants responded to this Interrogatory, as well as many of the Interrogatories below, that they would produce documents that "reflect the state and number of the trusts that participated in the investment change for which certain assets held in common trust funds originally established by Boatmens and Bank of America respectively were exchanged for shares of Nations Funds."9** Exhibit 7 at 4.

2.      The number of "Fiduciary Accounts" that owned shares of Nations Funds for each year for the past seven years.  (No. 2)

3.      The amount of money invested from "Fiduciary Accounts" in each of the more than 70 Nations Funds mutual funds over the past seven years. (No. 3)

4.      An itemization "by each type of Fiduciary Account maintained by the Bank the dollar amount and percentage of Fiduciary Funds[10] invested in each of the Nations Funds mutual funds at the end of each year for the period of 1997 to the present."  (No. 4)

        **Without waiving their objections, Defendants responded that they would "produce documents which reflect the state, dollar amounts and number of the trusts that participated in the investment change for which certain assets held in common trust funds originally established by Boatmens and Bank of America respectively were exchanged for shares of Nations Funds."** Exhibit 7 at 7.

5.      Identification "by account number and state in which the beneficiaries reside of all Fiduciary Accounts which hold/have held Nations Funds at any time during the period of 1997 to the present in which assets or property held in such Accounts were liquidated and the proceeds invested

--------------------------------------------------

Continued from previous page

401(k) Accounts or other accounts established pursuant to the Employment Retirement Security Act for which the Bank serves as Trustee; (3) Foundations, including but not limited to, 501(c)(3) Corporations for whom the bank serves in a fiduciary capacity; and/or (4) any other accounts for which the Bank serves in a fiduciary capacity." Exhibit 5 at 4.  "Bank" is defined to include Bank of America, N.A., together with *all* its affiliates and predecessors in interest. Id. (emphasis added).

9       Some of the assets of the trusts for which Ms. Kutten served as co-trustee were invested in Boatmens' common trust funds.  While some of the assets of the trusts for which Ms. Arnold was a beneficiary were invested in Bank of America common trust funds.

10      Plaintiffs define "Fiduciary Funds" to "mean assets and property of all kinds held in Fiduciary Accounts." Id. at 5.

in Nations Funds shares, and, if any, indicate the source of funds used to acquire the Nations Funds shares." (No. 5)

6.    "State in six month intervals . . . from 1997 to the present, the total amounts of investment (both in dollars and percentages) of Fiduciary Funds in each of the Nations Funds and for each date, state the total asset value of each such fund." (No. 6)

In sum, these Interrogatories seek information for thousands of accounts, across the United States for an extensive time period - all of which has no bearing on the issues in this case. Moreover, Defendants have provided documents which provide the detailed information Plaintiffs are seeking for the accounts at issue.

Next, in Interrogatories 7-15, Plaintiffs move beyond "Fiduciary Accounts" and insist upon obtaining information from the 70 Nations Funds mutual funds and their registered agent, which are not parties to this action. Plaintiffs do not quote or even discuss Interrogatories 8-15 in their Motion to Compel because the overly broad nature of the requests is readily apparent from reviewing them:

7.    The category of investor who owns the percentage of the Nations Fund not owned by or on behalf of the Fiduciary Accounts (i.e., the Bank, another bank or trust institutions, private individual investor, brokerage house, insurance company etc.) at the end of each year for the past seven years. (No. 7)

8-9.    For each of the more than 70 funds, the identity of each affiliate or subsidiary of either Defendant which receives/received fees or other revenues of any kind from each fund for each year from 1997 to the present and identify the services provided in exchange for each fee or other source of revenues, and for each such affiliate, the annual amount of fees, the services provide, whether the Bank "securitized those fees or other source of revenues . . . or realized any revenue or profit from such securitizations; and the disposition of the proceeds from the securitizations." (Nos. 8-9)

10.    The identity of "all non-Bank entities which receive(ed) fees or other payments of any kind from each of the Nations Funds for the period of 1997 to the present" and the identity of the services provided in exchange for each such payment. (No. 10).

11.    The identity of all Trustees of NFT since it was established, and with respect to each person, state whether the person was nominated, proposed or suggested by either Defendant or their respective subsidiaries or affiliates, employees, agents or counsel. (No. 11)

12-13.   The identity of "each securities brokerage firm used by any of the Nations
Funds to consummate transactions in securities and, as to each, state
whether it is or was a subsidiary or affiliate of either Defendant," and for
each brokerage firm, state the total payments made by any of the Nations
Funds for each year from the period of 1997 to the present to the
brokerage firm. (Nos. 12-13)

14.   The identity of "each entity to which any of the Nations Funds made so-
called 12b-1 payments for each year from the period of 1997 to the present
and, with respect to each, the amount of such payments and the services
for which the payments were made." (No. 14)

15.   The identity of the person providing answers to these interrogatories.
(No. 15)

**Without waiving their objections, Defendants responded
"counsel for Defendants."** Exhibit 7 at 18.

Plaintiffs have subpoenaed Nations Funds Trust ("NFT") for much of this information.[11]

No doubt Plaintiffs will highlight NFT's objections to the subpoenas as a basis to try to extract

information from Defendants. However, Defendants cannot produce information they do not

have. Further, as Plaintiffs are very well aware, to the extent they press enforcement of the

subpoena against NFT, which includes requests related to a multi-district litigation proceeding in

Maryland in which Plaintiffs' counsel is also counsel of record, they will face rebuke from the

Court in that proceeding, where discovery is currently stayed.

**The Verification to the Interrogatories.** Plaintiffs' issue with the Verification and the

precise relief they are seeking related to this issue is unclear. Ms. McCarthy-Lopez reviewed

and signed the Verification attached to Defendants' Responses. See Exhibit 6 ¶ 6 and Exhibit 7

(for copy of verification provided). Nothing in the rules requires the verification to note a date,

her employer or address. Nevertheless, to avoid any issues, Ms. McCarthy-Lopez signed the

---

[11]   NFT is a Delaware statutory trust that governs the Nations Funds and controls the
investment policies and permissible investments of the Funds; selects the management of the
Funds, including the Board of Trustees; the Funds' investment adviser and sub-advisers; and
other service providers to the Funds. NFT is a registered investment company in the Nations
Funds Family, which currently has more than 70 distinct investment portfolios. NFT was
organized as a Delaware business trust, a form of entity now known as a statutory trust, and is a
separate and distinct entity from Defendants, with the NFT shareholders voting to elect the
Board of Trustees.

verification after she reviewed the final draft responses within a few days of the due date, and her employer is the Bank. When Plaintiffs raised issues as to the Verification on the meet and confer call, they insisted during the call that Defendants produce Ms. McCarthy-Lopez for deposition. Defendants agreed to do so. Exhibit 6 ¶ 6. Defendants do not know what else to do to resolve whatever issues Plaintiffs have here.

### III.    PLAINTIFFS' INTERROGATORIES SEEK IRRELEVANT INFORMATION AND ARE BURDENSOME AND OVERLY BROAD

#### A.    There is No Issue for the Court to Resolve as to the General Objections.

Plaintiffs devote pages 3-7 of their Memorandum to Defendants' General Objections. As with the Verification, Defendants are not quite sure what to do in response because, cutting through the rhetoric, there appear to be no disputes here.

To explain, as to the definitions of "Defendants" and "Bank," Defendants objected that they were overly broad to the extent they go beyond the parties to this action. Plaintiffs note, however, in their Memorandum that "Bank" means only "Bank of America, N.A." Plaintiffs' counsel also notes in his Declaration that "Bank" means "Bank of America, N.A." and "defendants undoubtedly know what is meant by this basic term." Declaration of Richard Greenfield ¶ 3. However, in the Interrogatories, Plaintiffs defined "Bank" to "mean Bank of America, N.A. together with *all* its affiliates and predecessors in interest." Exhibit 5 at 4 (emphasis added). To the extent Plaintiffs now concede that "Bank" does not include affiliates, Defendants withdraw their general objection as to this definition.

With respect to the General Objection based upon various privileges, Defendants did not withhold any responses to the Interrogatories on this basis. With respect to Defendants' objection that a class has not yet been certified, Defendants did not withhold information on this basis either – having agreed to produce reports in response to the Interrogatories reflecting information as to the proposed class, including information as to all accounts that were subject to the conversions at issue, noting the type of account, the dollar amounts involved and the state in

which the account was located. Defendants also have not limited the information to a single type of trust account, as Plaintiffs imply. As Defendants urged Plaintiffs to do, if they had only waited until the remaining portion of this information had been produced, which is extensive, they would have seen this point for themselves. As to confidentiality, Defendants have advised Plaintiffs many times, that they have not withheld information based upon confidentiality or any of the other general objections, with the exception of the redaction from the reports of customer names and private identifying information, such as addresses, which Plaintiffs do not need and have not claimed they need.

The remaining general objections were asserted simply to preserve an issue to the extent one arises later. For example, Plaintiffs' definitions are not a model of clarity. To the extent Defendants have misinterpreted those definitions, they simply want to preserve the right to explain that they did not understand some of the definitions, which Plaintiffs refused to clarify during the meet and confer call. Indeed, Plaintiffs offered many of the same general objections in response to Defendants' Document Requests, presumably on the same basis – to preserve their rights in the event an issue arises with respect to the responses. See Exhibit 8.

Other than redacting customer identifying information, no information was withheld from Plaintiffs based upon the General Objections. Accordingly, there is no issue for the Court to resolve or response to compel with respect to the General Objections.

**B.      Plaintiffs' Motion to Compel Further Responses to Interrogatories 1-5 Seeking Information About Every "Fiduciary Account" for the Past Seven Years Should Be Denied.**

Plaintiffs claim that their 15 Interrogatories with numerous subparts are "pointed" and seek only "background information." Plaintiffs' Memorandum at 2. Interrogatories 1-6 seek information over a seven year period concerning more than 100,000 accounts. As set forth above, these Interrogatories are neither "pointed" nor limited to "background information."

*1. Beyond the trust customers whom Plaintiffs are seeking to represent, the Interrogatories seek irrelevant information and are overly broad.* Plaintiffs' claim that they

need responses to the Interrogatories to establish numerosity is a ruse. Regardless of how Plaintiffs try to define a class, it is likely that with Bank of America, they can easily establish this requirement and the imposition of irrelevant, burdensome discovery should be not be condoned on this slim ground. To the extent the Court disagrees, and to the extent that the putative class is as defined in the Amended Complaint – customers of Boatmens Bank and the legacy Bank of America whose trusts assets were invested in common trusts funds and later invested in affiliated mutual funds, Defendants will stipulate as to numerosity of putative class members because they are confident this Court will not certify a class based upon the remaining requirements.

With respect to Interrogatories 1-5, Plaintiffs offer no explanation for why they need to go far beyond the allegations in the Amended Complaint to obtain a frightening and broad array of customer information for accounts that never had investments in common trust fund vehicles or for thousands of accounts, such as retirement, IRA and charitable accounts, which have no claims in this case. Wacker v. Gehl Co., 157 F.R.D. 58 (W.D. Mo. 1994) (granting protective order where party seeking discovery failed to demonstrate that requested information would lead to the discovery of admissible evidence). The proposed class is limited to "trust" accounts, and Defendants have responded accordingly.

Moreover, the conversions of Ms. Arnold and Ms. Kutten's trust assets occurred in 2002 and 2000, respectively. Since 2002, the Bank has not converted any assets from common trust fund vehicles to affiliated mutual funds. Plaintiffs have never explained why they should be able to obtain information prior to 2000 and after 2002. This information has no bearing on any issues in this case, and accordingly, Plaintiffs' motion should be denied. Upsher-Smith Laboratories, Inc. v. Mylan Laboratories, Inc., 944 F. Supp. 1411, 1444 (D. Minn. 1996) (denying motion to compel and holding that "while the standard of relevancy for purposes of discovery is liberal, practical considerations dictate that the parties should not be permitted to roam in the shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so.") (Citations omitted).

      ***2. To attempt to obtain the requested information would impose an undue burden on the Bank***.  To the extent the Court would order Defendants to respond to Interrogatories 1-5, the Bank has no mechanism or easy source from which to obtain the requested information on more than 100,000 accounts for the past seven years in any event. Contrary to Plaintiffs' expression during the meet and confer call, the Bank cannot access seven years of information as to more than 100,000 accounts located across the United States by "pushing a button."  Exhibit 9 ¶4  (Affidavit of David Thayer).

      To even determine whether there may be a computer solution to answering these questions would involve an extensive amount of work, with no guaranty that the work would produce the requested information in the end.  If the computer solution did not work, the only way to produce the requested information would be to conduct a file by file review.  For personal trust accounts alone, this review would consist of approximately 80,000 trust files located in many states across the United States.  Id.

      To even attempt to determine whether the information as to personal trust accounts alone could be obtained from computer data would cost the Bank hundreds of thousands of dollars and months of full time employee hours.  Id. ¶5.  To explain, the Bank does not have its historical trust customer data from a single computer system.  All information prior to 1999 is archived data from computer systems that the Bank no longer uses.  For example, data from 1997 as to Boatmens Bank customers (such as Ms. Kutten) is on tape storage and consists of data files, not user readable files.  Id.  As Plaintiffs acknowledge, the Bank has gone through mergers, and much of the data that Plaintiffs are seeking exists on tape storage from systems that the Bank no longer uses.  Id.

      To try to obtain the requested information from 1997 to the present, the Bank would need to pull an extensive amount of archived and current computer data – which in hard copy form would potentially constitute tens of thousands of boxes of data – which was maintained on at least five different systems.  The voluminous amount of data would need to be gathered largely from old data files.  Depending on the size of these old data files, an appropriate place with

sufficient disk space would have to be designated to accommodate loading these files. Next, the format of these old data files would have to be determined – such as a determination of what files contain which fields of data. Further examination of the old data files as well as other voluminous documentation would be necessary to discern the meaning of the code values under each obsolete system and appropriately map them to a code to use as a basis to extract the data. Finally, after already incurring substantial time and expense, new programs would have to be developed to extract and translate the old data files in order to attempt to provide the information sought in Plaintiffs' Interrogatories. Even if this process is implemented, the Bank's systems personnel do not know if the information Plaintiffs are seeking can even be obtained from the data files from the old systems. Id. ¶6.

Even as to the Bank's current data base, which has information for market values, etc. as a "snapshot" for a single day and transaction history for only the past 18 months (a time frame wholly irrelevant to this action), this information cannot be pulled with the press of a button. Exhibit 9 ¶7. Indeed, special programs would have to be written since the information is not maintained in a manner that would enable the Bank to answer the questions posed. Id. The Bank estimates that it would take more than 100 employee hours to try to determine whether the Bank's current database could even generate the information Plaintiffs are seeking. Id. Transactional history information prior to 18 months ago would have to be pulled from archives and loaded onto the current operating system. Even if the data could be programmed to extract the requested information, it would only provide partial responses to Plaintiffs' questions. Id.

Even if Defendants could come up with a partial computer solution, there is still information that Defendants could not provide without a file by file review of the approximately 80,000 personal trust customer files located across the country. Id. ¶8. For example, the Bank does not believe that it maintained historical data by "account type" to be able to respond to Interrogatory No. 2 beyond what it has already agreed to produce. Id. In addition, the Bank did not maintain data that would answer Interrogatory No. 3 beyond what it has already agreed to produce – stating the total amount of money invested from all "Fiduciary Accounts" into each of

the 70 Nations Funds at the end of the last seven years.  Id.  Lastly, the Bank does not maintain computer data to respond to Interrogatory No. 5 - demanding the source of funds (e.g., sale of real estate, stock, cash, etc.) used in all "Fiduciary Accounts" to purchase shares of Nations Funds over the past seven years.  Id.  The Bank would have to review each file to attempt to determine the source of funds.

Even if Defendants could obtain a total amount of "Fiduciary Account" assets invested in Nations Funds in response to Interrogatory No. 4, Defendants simply do not know what percentage this amount would constitute in terms of the aggregate assets invested in more than 70 Nations Funds.  Id. ¶9.

Again, without a computer solution, the Bank is left with sifting through approximately 80,000 personal trust account files, located across the country, and this would address only the "trust" accounts and not the broad universe of accounts for which Plaintiffs are seeking information.  Id. ¶10.  Even the Kutten and Arnold files alone constitute more than 5,000 pages of records.  Given the significant burden to Defendants, Plaintiffs' motion should be denied.  Upsher, 944 F. Supp. at 1445 (denying motion to compel based upon undue burden where the request sought thousands of documents over a six year period that were marginally relevant) (citing Independent Petrochemical v. Aetna Cas & Sur. Co., 117 F.R.D. 283, 286 (D.D.C. 1986)).[12]

### C.     Plaintiffs' Motion to Compel Responses to Interrogatories 6-15 Seeking Information Concerning Nations Funds Should Be Denied.

Interrogatories 6-15 seek information concerning Nations Funds mutual funds and NFT.  Defendants do not have information responsive to Interrogatories 6-15, and indeed, Plaintiffs are seeking to obtain much of this information from NFT directly.  Admittedly, NFT has objected to

providing information in response to two subpoenas.  Nevertheless, NFT's responses do not

provide a basis to compel Defendants to produce what they do not have. Further, the information requested is wholly irrelevant.

For example, in seeking to compel a response to Interrogatory 6, Plaintiffs do not explain the relevance or reason why they need "in six month intervals . . . from 1997 to the present, the total amounts of investment (both in dollars and percentages) of Fiduciary Funds in each of the Nations Funds and for each date, state the total asset value of each such fund." While they take jabs at Defendants' counsel, they provide no basis for their Motion to Compel as to this Interrogatory. Plaintiffs' Memorandum at 8. This information has absolutely no bearing on this case, and because Plaintiffs have not met their burden, Plaintiffs' motion as to Interrogatory No. 6 should be denied.

In Interrogatory No. 7, Plaintiffs seek to learn the "categories of investors" in Nations Funds. In trying to explain why they need to know the various types of investors, Plaintiffs surmise that this information will show that "the Bank, for its fiduciary accounts, made substantial percentages of the investments in the Nations Funds and that relatively small percentages of other investors (who could act independently) selected the Nations Funds as worthwhile investment vehicles." Plaintiffs' Memorandum at 15-16. This is absurd. Even if Plaintiffs can prove this speculative point, which Defendants dispute, this "fact" will not establish that the Bank breached its fiduciary duty to Ms. Kutten by investing her assets, with her consent, in affiliated mutual funds. In other words, the point Plaintiffs are attempting to establish has nothing to do with the claims in the Amended Complaint.

Plaintiffs offer nothing more in support of their Motion as to Interrogatory No. 7. Moreover, Plaintiffs offer *nothing* to support their Motion to Compel Responses to Interrogatories 8-15. Those Interrogatories go even farther afield as to NFT and Nations Funds, including seeking information about payments those entities have purportedly made and brokers they purportedly have used. This information has no bearing here at all. Plaintiffs are clearly fishing. "While the standard of relevance in the context of discovery is broader than in the context of admissibility, this often intoned legal tenet should not be misapplied so as to allow

-19-

fishing expeditions in discovery." <u>Hofer v. Mack Trucks, Inc.</u>, 981 F. 2d 377, 380 (8th Cir. 1992) (citations omitted). Instead, "some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." <u>Id.</u> <u>quoted</u> <u>in</u> <u>Upsher-Smith Laboratories,</u> <u>Inc. v. Mylan Laboratories, Inc.</u>, 944 F. Supp. 1411, 1443 (D. Minn. 1996).

Because Plaintiffs have provided no grounds to support their Motion as to Interrogatories 8-15, their Motion should be denied. Further, this Court should not prejudice Defendants by permitting Plaintiffs to provide a basis for their Motion to Compel for the first time in a Reply.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that this Court deny Plaintiffs' Motion to Compel.


Respectfully submitted,


<u>/s/ Jeffrey S. Russell</u>
BRYAN CAVE LLP
Jeffrey S. Russell
Jason E. Maschmann
One Metropolitan Square
211 N. Broadway, Suite 3600
St. Louis, MO  63102
Telephone: 314.259.2000
Facsimile:  314.259.2020

and

Gregory B. Jordan, Esquire
Mary J. Hackett, Esquire
Sharon L. Rusnak, Esquire
REED SMITH LLP
435 Sixth Avenue
Pittsburgh, PA  15219
412.288.4124
412.288.3063 Fax

Counsel for Defendants

December 3, 2004

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of December, 2004 I caused a copy of the foregoing Defendants' Memorandum in Opposition to Plaintiffs' Motion to Compel upon the following counsel of record by the manner indicated below:

Steven M. Hamburg, Esq.
Holly M. McIntyre, Esq.
Summers Compton Wells & Hamburg, P.C.
8909 Ladue Road
St. Louis, MO  63124

*Via the Court's Electronic Filing System*

Richard D. Greenfield, Esq.
Greenfield & Goodman LLC
7426 Tour Drive
Easton, MD  21601

*Via the Court's Electronic Filing System*

Amy M. Boomhouwer, Esq.
Gancedo & Nieves LLP
144 W. Colorado Boulevard
Pasadena, CA  91105

*Via the Court's Electronic Filing System*

Nicole R. Avallone, Esq.
Lerach, Coughlin, Stoia, Geller, Rudman and Robbins, LLP
197 S. Federal Highway, Suite 200
Boca Raton, FL  33432

*Via U.S. Mail*

/s/ Jeffrey S. Russell