UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ELLEN JANE KUTTEN AND<br>MARY ANN ARNOLD,<br>on behalf of themselves,<br>and all others similarly situated<br><br>Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA, N.A., et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 05-20<br><br>(Case No. 4:04-CV-0244 TIA currently pending in the United States District Court - Eastern District of Missouri) |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL COMPLIANCE WITH CIVIL SUBPOENA TO NATIONS FUNDS TRUST**

April 22, 2005

Sidney S. Liebesman (Del. ID No. 3702)
GRANT & EISENHOFER P.A.
Chase Manhattan Centre
1201 North Market Street
Wilmington, Delaware 19801
Tel: (302) 622-7000
Fax: (302) 622-7100

*Local Counsel for Plaintiffs*

SUMMERS, COMPTON,
  WELLS & HAMBURG
Steven M. Hamburg
Holly M. Mcintyre
8909 Ladue Road
St. Louis, MO 63124
Tel: (314) 991-4999
Fax: (314) 991-2413

GANCEDO & NIEVES LLP
Hector G. Gancedo
Amy M. Boomhouwer
144 W. Colorado Blvd.
Pasadena, CA 91105
Tel: (626) 685-9800
Fax: (626) 685-9808

GREENFIELD & GOODMAN LLC
Richard D. Greenfield
7426 Tour Drive
Easton, MD 21601
Tel: (410)745-4149
Fax: (410) 745-4158

LERACH, COUGHLIN, STOIA, GELLER,
  RUDMAN AND ROBBINS, LLP
Nicole R. Avallone
Jonathan Stein
197 S. Federal Highway, Suite 200
Boca Raton, FL 33432
Tel: (561) 750-3000
Fax: (561) 750-3364

*Counsel For Plaintiffs And The Class*

# **TABLE OF CONTENTS**

| | | |
|---|---|---|
| TABLE OF AUTHORITIES | | ii |
| INTRODUCTION | | 1 |
| BACKGROUND | | 3 |
| ARGUMENT | | 6 |
| A. | Plaintiffs' Subpoena Seeks Relevant Information From NFT | 6 |
| B. | NFT Has Not Shown Sufficient Burden To Excuse It From Compliance | 8 |
| C. | NFT's Claim of Privilege, Protection, and Confidentiality Is Insufficient to Excuse Compliance with the Subpoena | 10 |
| D. | NFT Should Be Compelled To Produce Documents Containing Personal Client Information Because The Information Was Properly Subpoenaed And Is Necessary And The Confidentiality Agreement Would Protect The Contents Of Those Documents. | 11 |
| E. | Plaintiffs Should Not Have To Bear The Costs Of Production Unless The Court Finds That The Costs To NFT Are Significant And Then Plaintiffs Should Not Bear The Entire Costs Of Compliance. | 12 |
| F. | NFT Should Be Required To Respond To The Subpoena In Full And Identify What "Publicly Available" Documents Are Responsive To Which Requests. | 13 |
| CONCLUSION | | 14 |

# TABLE OF AUTHORITIES

*Cash Today of Texas, Inc. v. Greenberg,*
  2002 U.S. Dist. LEXIS 20694 (D. Del.) ............................................................. *passim*

*Coca Cola Bottling Co. v. The Coca Cola Co.,*
  107 F.R.D. 288 (D. Del. 1985) ............................................................................ 10

*Concord Boat Corp. v. Brunswick Corp.,*
  169 F.R.D. 44 (S.D.N.Y. 1996) ........................................................................ 9, 10

*Gabe Staino Motors v. Volkswagen of Am., Inc.,*
  2003 U.S. Dist. LEXIS 3194 (E.D. Pa. 2003) ....................................................... 9

*Linder v. Calero-Portocarrero,*
  346 U.S. App. D.C. 117 (D.C. Cir. 2001) ............................................................ 12

*Mannington Mills, Inc. v. Armstrong World Indus.,*
  206 F.R.D. 525 (D. Del. 2002) .............................................................................. 6

*New Park Entertainment L.L.C. v. Electric Factory Concerts, Inc.,*
  2000 U.S. Dist. LEXIS 531 (E.D. Pa. 2000) ...................................................... 8, 9

*Syposs v. United States,*
  181 F.R.D. 224 (W.D.N.Y. 1998) .......................................................................... 6

*Williams v. City of Dallas,*
  178 F.R.D. 103 (D. Tex. 1998) ............................................................................ 12

## RULES AND STATUTES

Fed. R. Civ. P. 26(b)(1) ................................................................................................ 6

Fed. R. Civ. P. 45(c)(2)(B) ......................................................................................... 12

Comes now plaintiffs, by and through counsel, and submits the following memorandum in reply to Nations Funds Trust's ("NFT") response to Plaintiffs' Motion to Compel.

## INTRODUCTION

In its Opposition, Nations Funds Trust ("NFT") argues that the Subpoena seeks information that is arguably privileged, protected, proprietary and irrelevant as well as that the Subpoena is overly broad, unreasonable and oppressive. NFT is throwing nearly every possible discovery objection at the wall hoping that at least one will stick and relieve it of any obligation to provide important and potentially damaging documents to plaintiffs. This is further evidenced by NFT's repetition that it is not a party to the litigation, a fact that is obvious given the use of a Rule 45 subpoena in a civil case. NFT does, however, concede that the plaintiffs are the beneficiaries of trusts that the Bank invested in Nations Funds, a relationship that is the basis of the subpoena and the reason why NFT and the Bank so vehemently oppose the discovery. *See* Memorandum of Third Party Nations Funds Trust in Opposition to Plaintiffs' Motion to Compel ("Opposition" or "Opp.") at 3.

NFT also attempts to characterize the plaintiffs, who have received opposition to discovery as to NFT at every point along the way in the underlying litigation thus far, regardless of merit, as uncooperative and obstinate. Unfortunately, the correspondence submitted in support of plaintiffs' Motion shows that plaintiffs tried unsuccessfully for many months to identify if NFT was willing to produce any documents in response to the Subpoena and if so then to obtain any such documents. Plaintiffs also agreed to limit production to a specific time period, agreed for production at a mutually convenient location, and agreed to phased production. Plaintiffs also carefully explained why the documents are relevant, necessary and that the requests are

sanctioned by Fed. R. Civ. P. 45. Plaintiffs did this while allowing the thirty-day period within which NFT was required to respond to the Subpoena to elapse, hoping to work out something with NFT and eventually see some responsive documents. Noticeably, NFT never filed a motion to quash the Subpoena, but instead forced plaintiffs to file a Motion to Compel. To date, plaintiffs have not seen a single document from NFT. It's conduct is classic "stonewalling."

The question for the Court is whether proper procedure was followed and whether the unprivileged information sought is relevant to the claims of plaintiffs or the defense of the Bank and appears reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs argue that the answer to that question is yes and that NFT should be ordered to produce the unprivileged documents.[1] Since NFT has not even submitted a privilege log or explain its failure to do so, it should be compelled to produce all documents covered by the subpoena, whether arguably privileged or not.

---

[1] Although NFT argues, without having reviewed any documents, that privileged documents are contained within the information sought by plaintiffs' Subpoena (see NFT's Opposition at 11), plaintiffs do not know at this time to what documents, if any, NFT's claim of privilege applies.

2

## BACKGROUND

In the underlying action, plaintiffs argue that the Bank breached its fiduciary duty to beneficiaries of fiduciary accounts for which it serves as trustee by investing fiduciary assets into the Bank's proprietary mutual funds, the Nations Funds, nominally controlled by NFT. *See* Amended Complaint, attached to supporting Declaration of Sidney S. Liebesman ("Liebesman Decl.") as Ex. 1. The Bank's mutual funds business is conducted through the affiliated and proprietary NFT, which is controlled by a Board of Trustees that essentially serves at the pleasure of the Defendants, its subsidiaries and affiliates. Although NFT tries to make it and the Bank seem like entirely separate entities, the truth is that they are not and/or were not in the period from 1997-2003. The Bank's settlement of the late trading/market timing allegations in the New York Attorney General Investigation and MDL, in which it agreed to implement certain election and retirement procedures for the NFT trustees that will result in the replacement of the NFT trustees raised concerns that the NFT is actually controlled by the Bank. *See* Letter from Mutual Fund Director's Forum to William H. Donaldson, Chairman, United States Securities and Exchange Commission of 4/22/04, attached to Liebesman Decl. as Ex. 2. In this letter, Mutual Fund Director's Forum states that the settlement could "undermine director independence by reversing the relationship between fund independent directors [NFT trustees] and the adviser [the Bank], thereby turning the Investment Company Act [of 1940] on its head." *Id.* at 2.

The Bank, in addition to certain relief relating to NFT and its Board have agreed to pay $675 million in fines, penalties, fee reductions and restitution to Nations Funds shareholders in the settlement. According to the settlement document, which was finalized on February 9, 2005, BACAP, an affiliate of the Bank, agreed not to manage or advise any Nations Funds unless NFT made changes to its corporate governance, including the retirement or refusal of reelection of the

3

seven trustees with the longest tenure, and at least seventy-five percent of the Board of Trustees are not interested persons of the Bank and have not been directors, etc. of the Bank. *See* Assurance of Discontinuance Pursuant to Executive Law § 63 (15) at 2, 39, 42-43 (relevant portions are attached to Liebesman Decl. as Ex. 3). In any event, NFT cannot deny that the Bank is a "controlling person" as it is the record owner of a majority of the shares of the Funds as a result of its holding them in the fiduciary accounts for which it serves as trustee. *See* Statement of Additional Information, Form 497, filed by Nations Funds Trust at 10 ("As of August 1, 2000, Bank of America, and its affiliates possessed or shared power to dispose or vote with respect to more than 25% of the outstanding shares of NFST [Nations Funds Trust, as defined on p. 4] and therefore could be considered to be a **controlling person** of NFST for purposes of the 1940 Act.")(relevant portions are attached to Liebesman Decl. as Ex. 4).

These documents elucidate the true relationship of the Bank and NFT, one that is wrought with improper relationships fostering monetary incentives for fiduciary breaches. Based on this relationship, plaintiffs allege that the business decision to invest fiduciary assets in the Nations Funds was without regard to what was in the best interest of the beneficiaries of the fiduciary accounts. To that end, plaintiffs must obtain documents concerning the structure, policies and processes of NFT, including the selection of the NFT trustees with whom the Bank is no longer permitted to do business.

NFT mischaracterizes the facts in its Statement of Facts section of its brief. The plaintiffs of the underlying action are beneficiaries of fiduciary accounts for which the Bank converted certain assets and common trust funds – an investment vehicle for fiduciary accounts for which the expenses and fees were paid by the Bank out of its Trustee's Fee – to the Bank's in-house proprietary funds, Nations Funds. As a result of the Bank investing fiduciary account's assets into

4

the Nations Funds mutual funds, the cost associated with the investment, *i.e.*, management fees, advisory fees and other hidden fund expenses, are paid by the beneficiaries. Prior to the "sale" of these funds to the accounts, the fiduciary accounts held common trust funds which was an investment vehicle used for fiduciary accounts for which the Bank bore all of the cost.

The Bank invests for its fiduciary accounts in no mutual funds other than its in-house funds, the Nations Funds, denying to the beneficiaries the opportunity to have mutual fund investments in cheaper, higher yielding and better quality funds. The business decision to convert these assets into their mutual funds was driven by benefits the Bank and its parent would receive, not benefits to the beneficiaries of the fiduciary accounts. As a consequence, plaintiffs assert that the Bank's conflict of interest transactions in which they elected to make trust accounts "profit centers" to the detriment of the beneficiaries resulted in breaches of duty to the beneficiaries.

NFT's assertions that the judge "previously presiding" over the case indicated that it was unlikely that this case would become a certified class action is a mischaracterization. There has been only one judge presiding over the *Kutten* case, Judge Terry I. Adelman, and he has never indicated any such thing. Prior to joining the *Kutten* case, Plaintiff Arnold had a case pending in the federal court of Los Angeles. That case had not progressed past a case management conference when the Court in California transferred the case to the *Kutten* action, agreeing with the Plaintiff that the Defendants had attempted to manipulate the forum location.

Judge Adelman's rulings in regard to the Motion to Compel *the Defendants* to furnish information from the *Nations Funds* (the subject of the interrogatories) is not relevant to the subpoena served on Nations Funds to which plaintiffs are entitled to compliance. It is Nations Funds that pays fees to the Bank and its affiliates. It is NFT which has documents requested in

5

the document production requests attached to the Subpoena. While perhaps intrusive, plaintiffs have a right to examine the very relevant documents and the information contained therein as to fees and revenue generated by the Bank from these Funds to allow them to commence quantification of the damages not only of plaintiffs but of the putative Class members when their investments were converted from fee-free Common Trust Funds (and other assets) to the proprietary, in-house Nations Funds. Likewise, the other documents requested goes to the heart of the individual and Class-wide claims pursued by plaintiffs Kutten, Arnold and others similarly situated. Judge Adelman stated that plaintiffs had not supported their request with case law and had not shown the relevance of the requests. Judge Adelman also indicated that he would entertain a motion to compel in the future if the plaintiffs tailored their requests. The requests in the subpoena to NFT have been sufficiently tailored. Moreover, NFT is the proper party from which to request the information.

## ARGUMENT

### A.    Plaintiffs' Subpoena Seeks Relevant Information From NFT

Since, a party generally "may obtain discovery regarding any matter, not privileged, which is relevant to the claim or defense of any party...[that is] reasonably calculated to lead to the discovery of admissible evidence," Fed. R. Civ. P. 26(b)(1), the Courts permit broad discovery. *Cash Today of Texas, Inc v. Greenberg*, NO 02 MC 77 (GMS), 2002 U.S. Dist. LEXIS 20694, *4 (D. Del. Oct 23, 2002).[2]

---

[2] Subpoenas are governed by Rule 26. *See Syposs v United States*, 181 F.R.D. 224, 226 (W.D.N.Y. 1998) ("The reach of a subpoena issued pursuant to Fed. R. Civ. P. 45 is subject to the general relevancy standard applicable to discovery under Fed. R. Civ. P. 26(b)(1)."); *accord Mannington Mills, Inc v. Armstrong World Indus*, 206 F.R.D. 525, 529 (D. Del. 2002).

6

A broad relevancy standard is used because relevance for purposes of discovery is determined in advance of trial and facts may eventually not be used for the ultimate issues in a case. *Id.* A court should deny discovery only if "it is palpable that the evidence sought can have no possible bearing upon the issues." *Id.* [internal quotations omitted.] Once a relevancy objection is raised, the party seeking the discovery bears the burden of showing relevance under the broad standard. *Id.*

Here, plaintiffs have met the test for relevancy in abundance. *See* Plaintiffs' Motion (D.I. # 1) at 6-11. NFT cannot genuinely dispute that the documents requested regarding plaintiffs' own fiduciary assets as they relate to the Bank's investment of their trust funds in Nations Funds is relevant. Additionally, plaintiffs' underlying action is a putative class action on behalf of all similarly situated beneficiaries of fiduciary accounts as defined by the Amended Complaint. In order to properly move the District Court in the Eastern District of Missouri for class certification, plaintiffs can obtain as much information regarding the facts of their fiduciary accounts as well as the facts regarding other fiduciary accounts and the funds in which accounts were invested. These facts may eventually go unused by plaintiffs in, *inter alia*, the motion for class certification or the ultimate trial of the action, however, plaintiffs are entitled to the discovery. NFT and its respective Nations Funds hold the information as to fees and expenses paid to the Bank's affiliates (requests 4, 6 and 7; *Id.* at 7-8), minutes of the Trustees in regard to the transactions between the Funds and the Bank as well as minutes relating to compliance with federal law in regard to the Bank's application to the SEC to convert assets held in the Bank's fiduciary accounts into the mutual funds as well as documents highlighting other benefits which accrued to the Bank as a result of the use of Nations Funds in the fiduciary accounts. *See* Requests 8, 9-12 and 13; *Id.* at 8-9. Documents in regard to the formation of the funds are

7

relevant to the defendants' business decision to convert fiduciary assets as these documents may show that the Funds were established or otherwise "bulked up" to allow them to be utilized as profit centers for the Bank and the creation of new "product" which could then be force cross-sold to the fiduciary accounts.

### B.  NFT Has Not Shown Sufficient Burden To Excuse It From Compliance

NFT objected to the Subpoena on the grounds of it being unduly burdensome. When examining a claim of burden, a court should consider the necessity of the information for the party seeking it. *Greenberg*, 2002 U.S. Dist. LEXIS 20694, at *13. In *Greenberg*, the court stated that there may have been undue burden on the non-party's five employees to produce over twenty thousand individual loan files, but that since the subpoenaing party suggested certain accommodations, the burden was not undue. *Id.*, at *14. The accommodations suggested in that case were electronic production and/or on-site inspection/copying by the requesting party. *Id.*

Here, plaintiffs dispute that the burden on NFT of production of any of the materials requested is undue given the size and sophistication of NFT, the fact that NFT has an interest in the outcome of this litigation, as well as plaintiffs' necessity. However, if the Court were persuaded that the burden was undue, plaintiffs are willing to work out accommodations so that the burden is lessened to that which is not undue. NFT has rejected all compromises offered to date that would have lessened its purported burden of complying with the subpoena.

In fact, plaintiffs were willing to try to narrow the requests, but NFT insisted that plaintiffs identify the documents that the Bank had not already produced that were sought from NFT. This task is impossible and it is also not required under the Federal Rules. A third party may be required to produce documents that are duplicative of those already produced by a party to the action. *New Park Entertainment L.L.C. v. Electric Factory Concerts, Inc.*, No. 98-

8

</s>7752000 U.S. Dist. LEXIS 531, *15-16 (E.D. Pa. Jan. 13, 2000) (Duplication objection was meritless.) Further, defendants have produced NO documents of a type which NFT would possess and the more than 100,000 documents produced by defendants have been mostly redacted tabular presentations of no utility or other "junk" production. Here, while some duplication is likely to occur if the defendants had legitimately complied with their discovery obligations, certainly there will be documents in NFT's possession that are not in the Bank's possession. Further, plaintiffs wish to test the veracity of the Bank's production and assertions thereupon. These are all valid reasons to overrule NFT's duplication assertions. *Id.*

When assessing burden, a court may also consider the necessity of the information as well as whether there are any alternative sources for the information. *Greenberg,* 2002 U.S. Dist. LEXIS 20694, at *14-15. NFT is certainly the best source for information regarding its own structure, practices and policies, but even more, NFT may now be the only source for other information, a fact that is derived from its own Opposition. *See* Opposition at 7 ("Judge Adelman rejected the Plaintiffs' attempt to obtain the same information from the Bank.").

Moreover, the onus of specifically showing a burden is on NFT. *See Gabe Staino Motors, Inc. v. Volkswagen of Am., Inc.*, No. 99-5034, 2003 U.S. Dist. LEXIS 3194, *5-6 (E.D. Feb. 27, Pa. 2003). NFT's assertion of burden without providing estimates of time needed to comply by which to gauge the degree of burden may be rejected. *Id.* NFT is a sophisticated litigant with access to the resources necessary to handle complex litigation. Moreover, NFT has not asserted that the documents are located across the country, thereby increasing its burden of production.

Finally, "what constitutes an undue burden in a given instance is a case specific inquiry." *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 53 (S.D.N.Y. 1996) (citing 9A Wright

9

& Miller, Civil 2d § 2449, at 48 & nn. 32-33). To that end, in this particular situation, the recipient of the subpoena has both the size and resources to respond, the underlying litigation is extremely important, and NFT will not be stripped of any of the materials needed for it to continue business. *Id.* These factors may be considered by the Court, especially since NFT has a direct stake in the outcome of this litigation. *Id.*

As part of the injunctive relief that the plaintiffs are seeking in the underlying litigation, plaintiffs have asked the court to give plaintiffs and the members of the class the right to obtain the replacement of the Bank as corporate fiduciary. As happened in the case of Ellen Kutten, replacement fiduciaries are highly unlikely to allow transfers of fiduciary accounts holding Nations Funds, which would have to be sold. Similarly, as to any beneficiaries who ultimately would remain with the Bank as a corporate fiduciary, plaintiffs would seek injunctive relief requiring the Bank to make the most appropriate investments for the beneficiaries' accounts. This would likely lead to the wholesale disposition of the investments in many of the Nations Funds. Thus, NFT would be directly impacted by the relief sought by plaintiffs in the underlying litigation.

### C. NFT's Claim Of Privilege, Protection, And Confidentiality Is Insufficient To Excuse Compliance With The Subpoena

As stated by plaintiffs in their moving papers, "[i]t is well established...that trade secrets are not absolutely privileged from discovery in litigation." *Coca Cola Bottling Co v. The Coca Cola Co*, 107 F.R.D. 288, 292 (D. Del. 1985). Rather, it is up to NFT to demonstrate with competent evidence that the information sought in plaintiffs' Subpoena is confidential and that its disclosure might be harmful. *Greenberg*, 2002 U.S. Dist. LEXIS 20694, at *6. NFT must establish that the information sought by plaintiffs "'derives independent economic value, actual

or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure and use [and] is the subject of efforts ... to maintain its secrecy.'" *Id.*, at *7 (citing 6 *Del. C.* § 2001 (4)(a) (2005); *also citing Procter & Gamble Co. v. Nabisco Brands, Inc.*, 111 F.R.D. 326 (D. Del. 1986)). With respect to harm, a court must consider the injury that would result from disclosure under an appropriate protective order. *Greenberg*, 2002 U.S. Dist. LEXIS 20694, at *7. It is also relevant whether the disclosure would be made to a non-competitor or a competitor. *Id.*

Here, NFT has not met its burden **in the slightest**. NFT does not argue that any of the information derives independent economic value. NFT merely generally asserts that the requested information is confidential without any support. In fact, NFT admits that it has not reviewed any of the documents to which it asserts this protection applies. As to harm, NFT states that the information disclosed may be used for "inappropriate trading," but it does not argue that the protective order suggested by plaintiffs and already so ordered in the underlying litigation would not alleviate that potential harm. Plaintiffs cited the particular portions of the protective order in place in the Eastern District of Missouri, which sufficiently protects NFT and its information. NFT has failed to "show, with specificity, that disclosure will work a clearly defined and serious injury." *Id.*, at *11.

> **D.   NFT Should Be Compelled To Produce Documents Containing Personal Client Information Because The Information Was Properly Subpoenaed And Is Necessary And The Confidentiality Agreement Would Protect The Contents Of Those Documents**

As to NFT's argument that it should not be required to disclose "personal client information," even banks and other financial institutions may be compelled to disclose non-

11

public personal financial information to nonaffiliated third parties pursuant to a properly authorized subpoena. *Id.*, at *12-13.

In any event, the contents of the documents that NFT claims contain personal client information would be protected by the Confidentiality Agreement in place in the Eastern District of Missouri, which is extensive and thorough. Indeed, the defendants even insisted upon an "attorneys eyes only" level of confidentiality to cover customer/client identities.

### E. Plaintiffs Should Not Have To Bear The Costs Of Production Unless The Court Finds That The Costs To NFT Are Significant And Then Plaintiffs Should Not Bear The Entire Costs Of Compliance

Rule 45 authorizes a district court to protect a non-party from "significant expense resulting from the inspection and copying commanded." Fed. R. Civ. P. 45(c)(2)(B). A district court considers whether a subpoena imposes expenses on a non-party and whether those expenses are significant. *Linder v. Calero-Portocarrero*, 251 F.3d 178 (D.C. Cir. 2001). If a court determines that the expenses are significant, then it will "protect the non-party by requiring the party seeking discovery to bear at least enough of the expense to render the remainder 'non-significant.'" *Id.* This does not mean that the requesting party should bear all of the costs of compliance. *Id.* (citing *In re The Exxon Valdez*, 142 F.R.D. 380 (D.D.C. 1992)).

Moreover, "[t]he court is not required to fix the costs in advance of production, although this...[may] be the most satisfactory accommodation to protect...[plaintiffs] from excessive costs." *Williams v. City of Dallas*, 178 F.R.D. 103, 114 (D. Tex. 1998). NFT has not proceeded in good faith since its counsel acknowledges that the subpoenaed documents have not even been reviewed. Under these circumstances, a claim of expense or even burden is not only hollow but should be rejected out of hand.

12

**F.    NFT Should Be Required To Respond To The Subpoena In Full And Identify What "Publicly Available" Documents Are Responsive To Which Requests**

As to the documents that NFT asserts are publicly available, NFT should be required to respond to the subpoena under oath and identify what "publicly available" documents are responsive to which requests. It is insufficient to object that some of the information requested is publicly available when the requests are stated with sufficient particularity. Plaintiffs' Subpoena does not request "prospectuses" outright. Rather, plaintiffs seek information that NFT unilaterally deems located within publicly available documents, despite plaintiffs' counsel's statement to the contrary. See Plaintiffs' Motion, D.I. #1, Ex. 15 at ¶ 5.

## CONCLUSION

For the reasons stated in plaintiffs' motion, as well as herein, including, *inter alia*, that NFT has not even remotely met its burden to excuse it from compliance, plaintiffs respectfully request that the Court order NFT to comply fully with the Subpoena and grant plaintiffs their attorneys' fees and expenses incurred as a result of having to bring this motion.

April 22, 2005

Sidney S. Liebesman (Del. ID No. 3702)
GRANT & EISENHOFER P.A.
Chase Manhattan Centre
1201 North Market Street
Wilmington, Delaware 19801
Tel: (302) 622-7000
Fax: (302) 622-7100

*Local Counsel for Plaintiffs*

SUMMERS, COMPTON,
   WELLS & HAMBURG
Steven M. Hamburg
Holly M. Mcintyre
8909 Ladue Road
St. Louis, MO 63124
Tel: (314) 991-4999
Fax: (314) 991-2413

GREENFIELD & GOODMAN LLC
Richard D. Greenfield
7426 Tour Drive
Easton, MD 21601
Tel: (410)745-4149
Fax: (410) 745-4158

GANCEDO & NIEVES LLP
Hector G. Gancedo
Amy M. Boomhouwer
144 W. Colorado Blvd.
Pasadena, CA 91105
Tel: (626) 685-9800
Fax: (626) 685-9808

LERACH, COUGHLIN, STOIA, GELLER,
   RUDMAN AND ROBBINS, LLP
Nicole R. Avallone
Jonathan Stein
197 S. Federal Highway, Suite 200
Boca Raton, FL 33432
Tel: (561) 750-3000
Fax: (561) 750-3364

*Counsel For Plaintiffs And The Class*

14